**In re SOUTHWEST PRODUCTS, INC.,
a California corporation, Debtor.**

**SOUTHWEST PRODUCTS, INC. and
Kent J. Hackman, Appellants,**

**v.**

**Ronald L. DURKIN, Chapter 11 Trustee
and Smith Acquisition Company,
Appellees.**

**BAP No. CC–91–2145–PMeV.
Bankruptcy No. LA–91–636441–AA.**

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted May 21, 1992.

Decided June 18, 1992.

---

Ray B. Bowen, Jr., Tarzana, Cal., for Southwest Products & Kent Hackman.

Amy L. Goldman, Encino, Cal., for Ronald Durkin.

Mark K. Worcester, Orange, Cal., for Smith Acquisition Co.

Before: PERRIS, MEYERS, and VOLINN, Bankruptcy Judges.

PERRIS, Bankruptcy Judge:

This appeal arises from the bankruptcy court's order approving the sale of substantially all of the assets of the debtor, Southwest Products, Inc., to the appellee, Smith Acquisition Company ("Smith"). On appeal, the debtor and its sole shareholder contend that the bankruptcy court erred in determining that Smith was a good faith purchaser and in approving the sale. We DISMISS this appeal as moot.

## FACTS

The debtor filed its Chapter 11 petition on February 5, 1991. The debtor's property included assets used in the debtor's business of manufacturing machined metal parts for the aerospace industry (the business assets"), including real property at 2240 Buena Vista, Irwindale, California ("the Buena Vista property"). Soon after the debtor filed its petition, the bankruptcy court appointed Ronald L. Durkin as Chapter 11 trustee for the bankruptcy estate ("the Trustee").

After operating the business for a period of time, the Trustee determined that due to the business's continuing decline, it was in the best interest of the estate that the debtor's business be sold as a going concern. The Trustee contacted numerous potential purchasers and provided financial information to all such potential purchasers who executed confidentiality agreements.

The Trustee's efforts led to an agreement to sell substantially all of the debtor's business assets to Smith, except accounts receivable, which, under the agreement, Smith would collect for the estate. The aggregate purchase price would be paid to the Trustee as follows: (1) Smith would pay $2,500,000 upon closing; (2) Smith would assume the debtor's obligations secured by the Buena Vista property in the amount of $2,350,000 to Union Bank and $320,000 to 1st American Bank; and (3)

Smith would execute a note in the principal amount of $400,000, to be secured by a third deed of trust on the Buena Vista property.[1] The sale was structured as a two part transaction whereby only the personal property would be transferred at the closing date. The transfer to Smith of title to the Buena Vista property and the assumption by Smith of the obligations secured by that property would not occur until the Trustee completed remediation of toxic waste contamination upon the property and obtained approval of the Department of Health Services. Until that time, Smith was to rent the Buena Vista property from the Trustee.

On August 20, 1991, the Trustee filed a motion for an order authorizing the sale of assets to Smith. The debtor and its sole shareholder, Kent Hackman, objected contending, *inter alia*, that the sale to Smith was not in good faith because of Smith's close relationship with William McKay, an officer of the debtor who will be an officer of and obtain a potential ownership interest in Smith.[2] Although McKay's relationship to Smith was disclosed in the motion, the debtor contends that this relationship, combined with the free access to the debtor's business granted to Smith by the Trustee and the Trustee's failure to provide financial information to Kent Hackman evi-

dences collusion between Smith and the Trustee, which precludes good faith purchaser status.

At a continued hearing on the matter, the bankruptcy court found cause to approve the sale. The debtor and Kent Hackman (collectively, "the appellants") filed this timely appeal from the order authorizing the sale.

## DISCUSSION

■ The dispositive issue in this appeal is whether the appeal should be dismissed as moot under 11 U.S.C. § 363(m).[3] Our consideration of this issue requires us to determine, *inter alia*, whether the bankruptcy court committed clear error in finding Smith to be a good faith purchaser. *See In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y.1988) (a bankruptcy court's determination of good faith under section 363(m) is a factual finding reviewed for clear error).[4]

■ Under 11 U.S.C. § 363(m), with certain exceptions that are not applicable here, when an appellant fails to obtain a stay of an order that permits the sale of a debtor's assets to a good faith purchaser, the appeal is rendered moot.[5] *See, e.g., In re Onouli–Kona Land Co.*, 846 F.2d 1170, 1171 (9th Cir.1988). The Trustee and Smith argue

---

1. In a subsequent modification, the parties changed the terms of the agreement to provided that the amount of cash paid at closing would be reduced to $2,200,000 and the note amount would be increased to $700,000.

2. The debtor employed McKay, an attorney licensed to practice in California, as a vice president/general counsel in 1986. In 1988, McKay became the debtor's general manager. Thereafter, McKay expressed an interest in purchasing the debtor. In January of 1991, McKay met with James Stancill, Smith's principal, about potential employment. Soon thereafter, Smith expressed an interest in purchasing the debtor.

3. All section references are to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.,* unless the context otherwise indicates.

4. The appellants note that the good faith determination was set forth in the conclusions of law, implicitly suggesting that the bankruptcy court determined good faith as a matter of law and *de novo* review may be more appropriate. We disagree. The findings and conclusions

state that all conclusions of law that are findings of fact shall be deemed to be findings of fact. E.R. at 1696. In addition, case law establishes that good faith involves a factual determination.

The appellants also suggest that because the bankruptcy court adopted the proposed findings, the Panel's review should be more stringent. The Ninth Circuit, however, applies a clearly erroneous standard even when a trial court adopts proposed findings. *See Orantes–Hernandez v. Thornburgh,* 919 F.2d 549, 567 (9th Cir.1990).

5. Section 363(m) provides, in pertinent part, as follows:

The reversal or modification on appeal of an authorization ... of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

that because the appellants failed to obtain a stay pending appeal, this appeal is moot. The appellants contend that the appeal is not moot because Smith is not a good faith purchaser and, in any event, because the sale has not been fully consummated the Panel could still grant effective relief.

### 1. *Smith as a Good Faith Purchaser.*

█ The appellants are correct that the mootness rule of section 363(m) applies only when a purchaser bought an asset in good faith. *E.g., In re Onouli–Kona Land Co.,* 846 F.2d at 1173. Although the Bankruptcy Code and rules do not define good faith, courts have indicated that a lack of good faith is shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *E.g., In re Ewell,* 958 F.2d 276, 281 (9th Cir.1992) (quoting *In re Suchy,* 786 F.2d 900, 902 (9th Cir.1985)).

The appellants contend that there is substantial evidence of misconduct involving McKay, Smith and the Trustee which establishes fraud, collusion and unclean hands on the part of these parties and a lack of good faith. The appellants also contend that McKay's position as an attorney and officer of the debtor precluded his ownership interest in Smith and rendered Smith a bad faith purchaser. We disagree.

While McKay did approach Union about obtaining financing for purchasing the debtor and did speak with Smith about such a purchase, this does not compel a finding of bad faith. The evidence reflects that Hackman told McKay and others that he was interested in selling and asked them to search for potential purchasers. *See* Excerpt of Record ("E.R.") at 1364, 1435–36 and 1446. Given this fact, McKay's conduct in approaching Union regarding financing for a purchase of the debtor and in approaching Smith and others about the purchase of the company does not necessarily establish bad faith.

Similarly, the evidence of other misconduct on the part of McKay, Smith or the Trustee that the appellants rely upon does not compel a finding of bad faith. The deposition testimony of Hamid Ali Baig, an employee of the debtor, does provide evidence that McKay told employees that they might lose their jobs if the sale to Smith did not go through, that McKay or Stancill, Smith's principal, offered incentives to employees to support the sale to Smith, that McKay made disparaging comments about Hackman to customers, that Stancill had regular and unescorted access to the debtor's business prior to the sale and that the debtor's management was stockpiling inventory, slowing shipments, delaying the steps necessary to get new orders and otherwise mismanaging the company. This testimony, however, is contradicted by the deposition testimony of McKay and Caswell Mooring, another employee of the debtor, as well as by other evidence. *See* E.R. at 1355–56, 1374, 1381–87, 1391–92, 1403–05, 1424–26, 1428–29, 1441–42, 1452, 1457–59, 1461, 1473; Trustee's Excerpt of Record ("T.E.R.") at 17–19, 22–26, 46–49. Contrary to the appellant's assertions, there is substantial evidence that the Trustee fully responded to Hackman's requests for financial information concerning the debtor. Other than the Baig deposition, which is contradicted, there is no evidence that the Trustee favored Smith over other prospective purchasers of the company.

The Trustee's conduct throughout this case reflects that he acted in the best interests of the estate. The Trustee operated the debtor in a manner that was similar to, if not more effective than, prepetition management. Despite the Trustee's efforts the debtor continued to lose money and the Trustee determined that it would be in the best interest of the estate to sell the debtor's assets as a going concern. The Trustee solicited interest from various prospective purchasers, provided information to such purchasers after obtaining their confidentiality agreement and negotiated, at arms length, an agreement to sell the company to Smith at a fair price. This evidence does not support a finding of fraud or collusion between the Trustee and purchaser that is necessary for a determination of bad faith.

Finally, the appellants' contention that McKay's position with the debtor combined with his potential ownership interest in Smith makes Smith a bad faith purchaser is unpersuasive. The evidence reflects that Smith will continue to employ McKay and McKay may acquire a 15% ownership interest in Smith at the expiration of three years of employment. This arrangement can be as readily explained by Smith's reasonable interest in maintaining continuity in management as by fraudulent or collusive conduct.

The authorities cited by the appellants do not compel a different conclusion. The appellants rely on the Panel's opinion in *In re Exennium, Inc.*, 23 B.R. 782 (9th Cir. BAP 1982), *rev'd,* 715 F.2d 1401 (9th Cir.1983), for the proposition that because McKay was an attorney for the debtor he could not purchase the assets at issue. The Panel did hold in *Exennium* that the debtor's former bankruptcy counsel was ineligible to purchase assets from the estate and overturned the sale in question. 23 B.R. at 786–88. The Ninth Circuit, however, reversed the Panel by determining that the appeal from the order confirming the sale was moot. In reaching this conclusion, the Circuit indicated that the fact that the purchaser may have been ineligible to buy property from the estate did not demonstrate a lack of good faith. 715 F.2d at 1404. Moreover, McKay was not, as was the challenged purchaser in *Exennium,* the bankruptcy counsel for the debtor. Although McKay was a member of the bar and was hired as general counsel for the debtor in 1986, there is no evidence that McKay acted as the debtor's attorney in its bankruptcy or with respect to any matters related to the sale. Given these circumstances, we do not believe that McKay's status as an attorney and as an officer of the debtor precludes Smith from being a good faith purchaser.

As explained above, the evidence relied upon by the appellants is either contradicted by other evidence or does not reflect conduct sufficiently egregious to compel a finding of fraud, collusion, or unclean hands. For this reason, the bankruptcy court did not commit clear error in determining that Smith purchased the assets in good faith.

### 2. *The Possibility of Effective Relief.*

Under general mootness principles, an appeal becomes moot when events occur that prevent an appellate court from granting effective relief even if the dispute is decided in favor of the appellant. *In re Income Property Builders, Inc.,* 8 B.R. 304, 305 (9th Cir. BAP 1980), *appeal dismissed,* 699 F.2d 963 (9th Cir.1982). The appellants rely upon general mootness principles, contending that without regard to the issue of good faith, this appeal is not moot because the sale has not been fully consummated and the Panel could fashion effective relief. In this regard, the appellants attempt to avoid the more specific mootness rule of section 363(m).

While the mootness rule of section 363(m) evolved in part from general mootness principles, *Onouli–Kona Land Co.* recognized the tension between general mootness principles and the "particular need for finality" in orders regarding sales in bankruptcy. 846 F.2d at 1172. The court indicated that the need for finality, rather than general mootness principles, has become the dominant rationale for the Ninth Circuit's mootness decisions in the context of orders allowing sales and that an absolute mootness rule would better serve the policy of finality and would complement the absolute language of section 363(m). *Id.* The court further indicated, however, that general mootness principles create a narrow exception to an absolute mootness rule—where real property is sold to a creditor who is a party to the appeal and the sale is subject to statutory rights of redemption. 846 F.2d at 1172–73.

*Onouli–Kona Land Co.* struck a balance between the particular need for finality in the context of sale orders and the broad application of general mootness principles and determined that general mootness principles will be implicated and effective relief may be afforded only when the narrow exception applies. While the Circuit may have subsequently created another exception for situations where state law would

permit an action to set aside a sale, *see In re Mann*, 907 F.2d 923, 926 (9th Cir.1990), there is no contention that either of these exceptions apply in this case. The appellants' reliance upon the broad application of general mootness principles is therefore misplaced in the context of this appeal from an order authorizing a sale.[6]

 Looking, as we should, to the mootness rule of section 363(m) rather than general mootness principles, the appellants' failure to obtain a stay of the order authorizing the sale to a good faith purchaser renders the appeal moot. Neither of the exceptions to the mootness rule apply. The fact that the sale may not be fully consummated does not prevent a determination that the appeal is moot because section 363(m) does not require the purchaser to take irreversible steps consummating the sale before the absence of a stay will render an appeal moot. *In re Exennium, Inc.*, 715 F.2d 1401 (9th Cir.1983). The underlying purposes of the need for finality and the protection of good faith purchasers are implicated regardless of whether the purchaser takes such irreversible steps.

Moreover, even if we were to look beyond the mootness rule of section 363(m) and consider the possibility of fashioning effective relief, the appeal is still moot. The record indicates that the personal property assets have been transferred to Smith, that Smith has made the $2.2 million payment required upon closing and that a substantial portion of those funds have been distributed by the Trustee to Union Bank, a creditor who is not a party to this appeal. Smith states that it has taken possession of the real property under a lease from the Trustee and is expending substantial sums in the operation of the business. Effective relief could not involve overturning these aspects of the sale because to do so could affect rights of third parties.

The one aspect of the sale that has not been consummated is the toxic waste remediation on the real property and the transfer of title to that property. While the appellants contend that effective relief could involve modifying the sale to allow the debtor to retain the real property, we do not agree. The transfer of the real property is an integral and inseparable part of the sale which cannot be disturbed without upsetting the bargain negotiated between the Trustee and Smith.

### CONCLUSION

For the reasons set forth above, we determine that the bankruptcy court did not commit clear error in finding Smith to be a good faith purchaser and that the appeal is therefore moot. We therefore DISMISS the appeal on that basis.

---

**6.** The authorities relied upon by the appellants in support of their general mootness arguments do not deal with an order authorizing the sale of property and do not implicate the bankruptcy mootness rule of section 363(m). *See In re AOV Industries, Inc.*, 792 F.2d 1140 (D.C.Cir.1986); *In re Consolidated Equity Properties, Inc.*, 136 B.R. 261 (D.Nev.1991).