**In re M CAPITAL CORPORATION, Debtor.**

**T.C. Investors; Robert Marlin, in His Capacity as Pledgeholder; Barry Marlin; Robyn Millan, Appellants,**

**v.**

**James J. Joseph, Disbursing Agent; Greater Acceptance Mortgage Corp.; John Rock; Michael A. Smith; Kenneth Marlin; Marlin Funding, Appellees.**

**BAP Nos. No. CC–02–1234–MOKMA, CC–02–1199–MOKMA.**

**Bankruptcy No. SA 99–16415.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

March 11, 2003.

[black bar]

---

Leonard M. Shulman, Marshack, Shulman, Hodges & Bastian LLP, Foothill Ranch, CA, Bennett L. Silverman, Gibson Dunn & Crutcher, Los Angeles, CA, for Appellants.

Todd C. Ringstad, Irvine, CA, for Greater Acceptance Mortgage Corp., John Rock, Michael A. Smith, James J. Joseph, Disbursing Agent, Danning, Gill, Diamond & Kollitz, LLP, Los Angeles, CA, for Appellees.

Before: MONTALI, KLEIN and MARLAR, Bankruptcy Judges.

## ORDER DENYING MOTION TO DISMISS APPEAL

MONTALI, Bankruptcy Judge.

### INTRODUCTION

In *Thomas v. Namba (In re Thomas)*, 287 B.R. 782 (9th Cir. BAP 2002) we held that when the good faith of an asset purchaser is placed squarely at issue to determine whether the purchaser is entitled to the safe harbor of Bankruptcy Code section 363(m) (11 U.S.C. § 363(m)), limiting appellate remedies, the bankruptcy court must make critical factual findings so that we can determine whether or not the appeal is moot. Now we are presented with a situation in which the asset purchasers and seller withdrew their contested motion that sought to have the court make section 363(m) good faith findings (the "good faith findings") that would limit remedies available on appeal.

We conclude that, by withdrawing their motion, the parties elected to change course away from the section 363(m) safe harbor limitation on appellate remedies, heading instead for the uncharted waters of a record that has no affirmative finding of good faith. Since the parties intentionally altered their course, they have waived the issue, and we need not remand for further trial court proceedings regarding good faith. Accordingly, we are not constrained in any way by section 363(m) as we approach consideration of the merits on appeal.

We publish this order to underscore the need for parties who desire the protection of section 363(m) to establish an evidentiary record for the bankruptcy court to make the necessary findings of fact and conclusions of law. Correlatively, the opponent of good faith does not have the burden to demonstrate the absence of good faith. Without the requisite determination, we do not assume section 363(m) good faith and must deal with the merits of these appeals without such limitation.

### BACKGROUND

Appellee James J. Joseph ("Joseph"), the Disbursing Agent under the confirmed plan of reorganization of debtor M Capital Corporation ("Debtor"), has filed a motion to dismiss one of these two procedurally consolidated appeals (the "Motion to Dismiss").[1] In his reply brief, Joseph is joined by appellees Michael Smith

---

1. As explained in more detail below, the appeal at issue (BAP No. CC–02–1234–MoKMa) is from an order approving a sale of certain property free and clear of liens. The other appeal (BAP No. CC–02–1199–MoKMa), is from an interlocutory order setting procedures for that sale. They stand or fall together when we address the merits of the appeal.

("Smith"), John Rock ("Rock") and Greater Acceptance Mortgage Corp. ("GAMC" and, together with Smith, Rock, and Joseph, "Movants").

The order at issue (the "Sale Order") approves Joseph's sale to Smith and Rock of Debtor's stock in GAMC, or Debtor's right to a payment on account of the purported redemption of that stock, free and clear of the lien of appellants. Appellants argue that the Sale Order should not have provided that the sale was free and clear of their asserted liens under section 363(f) and that they should have been allowed to credit-bid at the sale. The Sale Order has not been stayed, and Movants have presented us with evidence that the sale has been consummated and that Joseph has already distributed the proceeds.

## DISCUSSION

Movants rely principally on section 363(m), which provides:

> (m) The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in *good faith,* whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m) (emphasis added).

In the alternative, Movants argue that the appeal is moot under general equitable principles. *See Algeran, Inc. v. Advance Ross Corp.,* 759 F.2d 1421, 1423–24 (9th Cir.1985) ("failure to obtain a stay pending appeal has 'permitted such a comprehensive change in circumstances as to render it inequitable for this court to consider the merits of the appeal' "; and, alternatively, need for finality precluded review) (citations omitted).[2]

The irrefutable fact is that the bankruptcy court has not determined whether Smith and Rock are good faith purchasers and that "[b]ankruptcy's mootness rule operates *only* when a purchaser bought an asset in *good faith.*" *Onouli–Kona Land Co. v. Estate of Richards (In re Onouli–Kona Land Co.),* 846 F.2d 1170, 1173 (9th Cir.1988) (emphasis added) (citing both § 363(m) and *Algeran). See also Algeran,* 759 F.2d at 1424 (addressing good faith where § 363(m) did not govern).

### A. *Good faith*

The Court of Appeals for the Ninth Circuit has stated:

> Though the Bankruptcy Code and Rules do not provide a definition of good faith, courts generally have followed traditional principles in holding that a good faith purchaser is one who buys "in good faith" and "for value." *See, e.g., In re Abbotts Dairies of Pennsylvania, Inc.,* 788 F.2d 143, 147 (3d Cir.1986).

> Typically, lack of good faith is shown by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." [*Community Thrift & Loan v. Suchy*] *In re Suchy,* 786 F.2d 900, 902 (9th Cir.1985).

---

**2.** Movants also contend that the absence of a stay pending appeal justifies our granting the Motion To Dismiss. Had the bankruptcy court granted a stay pending appeal, the good faith-bad faith inquiry would be unnecessary and on review we would have available to us the full panoply of remedies. In the absence of that good faith determination, however, we proceed without regard to section 363(m) and despite the absence of a stay pending appeal. *See Ferrari N. Am., Inc. v. Sims (In re R.B.B., Inc.),* 211 F.3d 475 (9th Cir.2000)(no stay of sale order; no protection for buyer not a good faith purchaser).

*Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir.1992).

■ Movants ask that we determine the good faith issue ourselves, because there is allegedly no evidence of bad faith "in the record" (or at least none, allegedly, at the time of sale). We decline to do so because determination of section 363(m) good faith is the province of the trial court.

Appellants allege, inter alia, that:

(1) appellees unsuccessfully tried to sneak in a "good faith" finding by submitting their proposed order;

(2) Smith and Rock control GAMC, GAMC was one of the involuntary petitioners, and although the GAMC stock offered for sale was listed as having a value of approximately $1,000,000 in the Plan and Disclosure Statement, it was sold for only $225,000;

(3) GAMC allegedly failed to provide financial information to appellants that would have enabled them to bid; and

(4) GAMC allegedly is guilty of abuse of process in obtaining a state court temporary restraining order that attempted to deprive appellants of funds with which to bid, and then letting that order expire.

■ These allegations involve fact-intensive determinations that, as we recently observed, the bankruptcy court is in a better position to make. *Thomas*, 287 B.R. at 786. What was implicit in *Thomas*, and which we now make explicit, is that in such proceedings, the proponent of section 363(m) good faith has the burden of proof. This allocation of the burden matters in the present instance because an inference of good faith drawn from a trial court record that is silent on the question would amount to inverting the burden of proof.

To be sure, the cases cited by Movants have discussed the section 363(m) good faith analysis in terms of evidence inconsistent with good faith that was regarded as insufficient to overcome evidence of good faith. *See Onouli–Kona*, 846 F.2d at 1173–74 (no lack of good faith where, although appellant argued "grossly unfair advantage at the auction," purchaser had merely followed approved sale procedures, and bankruptcy court had properly approved such procedures and denied continuance of hearing confirming sale); *Suchy*, 786 F.2d at 901–902 (no lack of good faith where alleged fraud did not involve sale); *and Sulmeyer v. Karbach Enter. (In re Exennium, Inc.)*, 715 F.2d 1401, 1402, 1404 (9th Cir.1983) (even if, for public policy reasons, former attorney for debtor would have been disqualified from bidding, that would not demonstrate a lack of good faith). *See also Southwest Prods., Inc. v. Durkin (In re Southwest Prods., Inc.)*, 144 B.R. 100, 104 (9th Cir. BAP 1992) (summarizing *Exennium*).[3] Nevertheless,

---

**3.** Movants also cite *Suchy* for too narrow a definition of good faith. They claim that good faith is established, or must be presumed, based on a lack of evidence in the record of fraud or collusion. They argue that lack of good faith "is determined by *fraudulent* conduct during the sale proceedings," *Suchy*, 786 F.2d at 902 (emphasis added, citation omitted).

However, *Suchy* quotes the more complete definition of good faith that we noted above and that has been repeatedly applied in the Ninth Circuit:

The requirement that a purchaser act in good faith, of course, speaks to the integrity of his conduct in the course of the sale proceedings. *Typically*, the misconduct that would destroy a purchaser's good faith status involves fraud, collusion between the purchaser and other bidders or the trustee, *or* an attempt to take grossly unfair advantage of other bidders.

*Suchy*, 786 F.2d at 902 (emphasis added) (citations omitted). *See also Ewell*, 958 F.2d at 281 (applying same definition).

these decisions are best understood as addressing the burden of going forward once a prima facie case is made, rather than the burden of proof; none holds that the proponent of section 363(m) good faith does not have the burden of proof.[4]

Moreover, in addition to inverting inappropriately the burden of proof, it would be error to presume good faith from any lack of evidence in the record to the contrary because, as we pointed out in *Thomas*, evidence of a lack of good faith may not reasonably be available at the time of sale:

> The difficulty with the factual determination is that evidence genuinely probative of "good faith" is not commonly introduced, or even reasonably available, at the time a bankruptcy court approves a sale. To the contrary, the fact-intensive evidence regarding the buyer and relations with parties [in] interest that may indicate fraud, collusion, or unfair advantage—i.e. evidence suggesting lack of "good faith"—tends to emerge after the sale.
>
> Recognizing this difficulty, a bankruptcy court may, in the absence of a well-developed factual record, prefer to take the cautious approach of either refusing to make "good faith" findings or limiting remarks about "good faith" to the nonspecific observation that the court has no reason to doubt that the parties are proceeding in "good faith."
>
> A bankruptcy court that does have a proper evidentiary basis for a finding of "good faith" is, of course, entitled to do so as part of the sale process.
>
> The choice of whether to make a finding of "good faith" as part of the initial sale process belongs, in this circuit, to the bankruptcy court. Because findings of "good faith" made at the time of the sale may be premature because they are made before the really interesting facts emerge, the Ninth Circuit does not require that a finding of "good faith" be made at the time of sale and has rejected the Third Circuit's contrary rule. *Onouli–Kona Land Co.*, 846 F.2d at 1174, rejecting *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 149–50 (3rd Cir. 1986).

*Thomas*, 287 B.R. at 785.

The bankruptcy court in this case, perhaps presciently anticipating our decision in *Thomas*, expressed very similar views at a preliminary hearing, after it had entered the Sale Order, on the subsequently abandoned motion to reconsider its order and to add a finding of good faith:

> I understand the concept of well, if there's no showing that it's not good faith, then you should find that it is good

---

Moreover, in *Suchy* the sale occurred after debtor-appellants stipulated to relief from the automatic stay and completion of foreclosure proceedings, and the alleged *"fraudulent* misrepresentations" arose only in a cross-claim against the foreclosing lender in connection with its loans to debtor-appellants. *Suchy*, 786 F.2d at 901 (emphasis added). In other words, the alleged misconduct in *Suchy* was fraud, but none of that fraud occurred "in the course of the judicial sale proceedings," and therefore it was legally irrelevant to the good faith purchaser issue. *Suchy*, 786 F.2d at 902.

**4.** These decisions are also imprecise when they describe section 363(m) as a "mootness"

rule. The precise language of section 363(m) merely limits appellate remedies in event of reversal by precluding any effect on the validity of the sale, but it does not preclude other remedies. If (as often is the case) the only available remedy would be to invalidate the sale, then it is accurate to say that section 363(m) operates to moot an appeal. We recognized this distinction in a prior exploration of section 363(m) when we took care to consider the possibility of fashioning effective relief other than invalidating the sale before dismissing an appeal as moot. *Southwest Prods.*, 144 B.R. at 105.

faith [subject to any later showing of] fraud on the Court, or a fraud on the [trustee, disbursing agent, or other party conducting the sale] . . . .

You then have a potential argument that it's the law of the case and the matter has already been decided if you proceed as a matter of course at a sale to find good faith status of a buyer.

So I'm not about to embark upon a practice in this case, or any other case at this point, absent guidance from a higher court that requires or presumes that the Court will determine and find good faith just because there's the absence of bad faith showing at the hearing at the sale.

I think that would be dangerous as a practical matter, and inappropriate as a technical matter [because] the fraud more often than not isn't evident at the sale. It's subsequent to the sale that facts like that are uncovered and then brought to the Court in appropriate circumstances, not always, but at least potential[ly].

\* \* \* \* \* \*

We don't know who the buyer is until we have the sale. The buyer now must not only come with check in hand, but must come with proof of good faith? *How is anybody in a position at the hearing on the sale to attack good faith not knowing who the buyer's going to be?*

\* \* \* \* \* \*

. . . in sales where a buyer's identified in advance, everybody knows what the sale price is, there's *no bidding,* there's prob-

ably good reason to come in with a good faith part of a case, and give everybody an opportunity in advance to review, and if necessary, object.

\* \* \* \* \* \*

What is the relationship between the buyer[s] and GAMC? What's the relationship between the objector[s] [appellants] and GAMC? What's the relationship between the buyer[s] and the objector[s]? I'm not prepared on this record to just conclude that there's been no—or an insufficient inference or suggestion of collusion or improper conduct.

In other words, I respectfully disagree with the suggestion that . . . the evidence or the record before the Court doesn't justify an evidentiary hearing. [Emphasis added.]

For all of the reasons articulated by Judge Alberts, we reaffirm our holding in *Thomas* that the bankruptcy court was not required to make a finding of good faith simply because, according to Movants, there was no evidence of a lack of good faith. Moreover, on this record it would have been improper to enter a finding of good faith without an evidentiary hearing. Movants presented no evidence of good faith nor even a request for a good faith finding at the hearings on the sale, and although they proffered some evidence thereafter in the motion requesting a finding of good faith, it was never admitted into evidence and considered by the bankruptcy court because the motion was withdrawn in the face of opposition from appellants.[5]

---

5. We specifically disagree with the approach taken by the district court in *Official Comm. of Sr. Unsecured Cred. v. First Republicbank Corp.,* 106 B.R. 938, 942–43 (N.D.Tex.1989) in which it reasoned that the party contesting good faith has the burden to put the issue before the bankruptcy court. Such a view

begs the question by assuming the good faith conclusion. Nothing in section 363(m) operates to create a rebuttable presumption of good faith. While we disagree with that court's view of the effect of a blank record, we do agree that the requisite evidence is to be proffered to, and the factual determinations

## B. *Remand and waiver issues*

■ Ordinarily, where good faith has become a potentially dispositive issue, we would remand to the bankruptcy court for the limited purpose of determining good faith. *See Thomas,* 287 B.R. at 786. On remand, the bankruptcy court would have several options: it could find good faith; it could find that there was a lack of good faith and the presence of bad faith (perhaps sufficient to warrant unwinding the sale or other relief, if that were within the scope of the remand); or it could take a middle ground and determine that there is insufficient evidence to make either an affirmative finding of good faith or a finding of bad faith. *See id.* at 785 (noting difficulty of making findings as to good faith "before the really interesting facts emerge"). In all events, the only finding that limits appellate remedies under section 363(m) is the finding of good faith as to which the proponent of good faith has the burden of proof.[6]

■ In this case, however, we decline to remand because, after the issue was directly before the bankruptcy court, Movants chose to take the matter off calendar and to proceed with this appeal. In doing so, they elected to rely exclusively on the then-existing record as established through the following procedural history.

After several failed attempts to notice a sale of the stock, Joseph moved for an order approving a sale by auction. The bankruptcy court granted the motion by approving the sale procedures and then approving a sale to Smith and Rock as the only bidders. Nobody asked for a good faith finding at or before the hearing. Just prior to the hearing appellants filed supplemental points and authorities arguing that Smith and Rock lacked good faith under section 363(m) because of their failure to provide financial information and other alleged wrongdoing, including events designed to deprive them of access to funds a week before the auction (the "363(m) Opposition").

Nevertheless, on April 5, 2002, Joseph served a proposed order that included a finding that Smith and Rock "purchased the stock [subject to GAMC's purported redemption] in good faith within the meaning of 11 U.S.C. § 363(m)." Appellants filed an objection to that form of order, which pointed out the lack of request or evidence for a good faith finding at the hearings on the sale, and further noted appellants' 363(m) Opposition.[7]

Smith and Rock filed a response to the 363(m) Opposition, arguing that a good faith purchaser is one who buys "in good faith" and "for value," that their payment of $225,000 for the stock constituted value,

---

made by, the bankruptcy court, not the appellate court.

6. We note that findings under section 363(m) can limit or eliminate the scope of relief on any appeal, but that is an entirely separate issue from the bankruptcy court's own powers. If the bankruptcy court later becomes aware of a lack of good faith or misconduct—such as fraud, collusion, or unfair advantage in the bidding—then it has ample authority to revisit its order approving the sale and may vacate the sale, modify the order, or grant other appropriate relief. Fed.R.Civ.P. 60(b), *incorporated by* Fed. R. Bankr.P. 9024; *Gumport v. China Int'l Trust & Inv. Corp. (In re Intermagnetics Am., Inc.),* 926 F.2d 912, 915–17 (9th Cir.1991) (Rule 60 does not limit power to entertain independent action to set aside sale for fraud on court).

7. The objection also alleged that after the hearing and auction on March 29, 2002, appellants' counsel had confirmed with Joseph's counsel that no "good faith" finding would be included in the proposed order, but the declaration in support of the objection does not make the same allegation and we therefore disregard this allegation for purposes of this order.

that good faith is determined by a lack of fraudulent conduct, and that in the absence of any evidence in the record of such conduct they are entitled to a finding that they are good faith purchasers. The bankruptcy court nevertheless signed appellants' form of order, on April 19, 2002.

Movants thereafter filed a joint motion for reconsideration and for a finding of good faith purchaser status under section 363(m) (the "Reconsideration Motion"), supported by Joseph's declaration that "I am aware of no facts that wo[u]ld adversely affect the status of Smith & Rock as acting in good faith," and by a request for judicial notice of pleadings in the case and related adversary proceedings. In the motion they forcefully urged the court to make the good faith finding, saying such things as the finding is required when the purchaser gives value "and there is no evidence of fraud or collusion in the record"; the finding "is intrinsic to the sale process under Section 363"; the finding "is necessary to protect the interests of the Disbursing Agent and Creditors"; and that "without a finding of good faith under Section 363(m), the appellant gets, as a practical matter, a 'free stay.'"

Appellants filed an opposition to the Reconsideration Motion, with supporting declarations, a request for judicial notice, and evidentiary objections to Joseph's declaration. Movants filed a reply and two declarations, and appellants filed a sur-reply, more evidentiary objections, and several more declarations.

At a hearing on June 12, 2002, Movants urged the bankruptcy court to decide the matter on the papers, but the bankruptcy court declined to do so and indicated its intention to set the matter for an evidentiary hearing. After a break in the hearing, counsel for Smith and Rock stated,

[T]oday's proceedings have been very beneficial to us, and I think we now understand with much more clarity the nature of this Court's prior ruling on the order.

We've had the opportunity to discuss the state of the record. We are satisfied with the state of the record as it stands for purposes of defending an appeal, and we are therefore prepared to, and with the Court's indulgence, would request that the Court permit us to withdraw the motion.

Counsel for Joseph confirmed that he joined in the withdrawal, appellants did not oppose it, and the bankruptcy court accepted the withdrawal and took the matter off calendar. Thus, despite fervent pleas in the motion for reconsideration for good faith findings, there were none.

From the foregoing it is clear that Movants chose to rely on their theories (belied by their written words) that they did not need a finding of good faith from the bankruptcy court—either because they believed there was no evidence of bad faith in the record at whatever time they believed relevant, or because they believed we could make that determination, or for some other reason.[8] Whatever the reason, Movants settled upon the conscious litigation strategy of electing not to proceed when the matter had been fully briefed and the bankruptcy court was willing to set it for an evidentiary hearing and make the requisite determinations regarding good faith. By abandoning their effort to persuade the bankruptcy court of their good faith in an evidentiary hearing, Movants waived their entitlement to rely on the Section 363(m) good faith safe harbor.

We emphasize that we are not determining that there was any lack of good faith. Rather, Movants have simply waived the

---

8. *Thomas* had not been decided.

added protections that would have been available to them if they had obtained an affirmative finding of good faith from the bankruptcy court. Based upon Movants' decision, there is *no* basis in the record for the court to have made a good faith finding, and there is no justification for inferring such a finding. As is clear from the statute, in the absence of a good faith finding, any "reversal or modification on appeal" of the Sale Order could potentially "affect the validity" of the sale to Smith and Rock. 11 U.S.C. § 363(m).

## CONCLUSION

■ The history of this case should illustrate for litigants and bankruptcy courts the care that must be taken to protect truly good faith buyers so section 363(m) will have real meaning for them when the record supports its applicability. Where good faith has been challenged, facts must be established to obtain the safety that section offers. Boilerplate good faith findings in orders will not suffice, and courts should avoid the temptation to sign such orders without an evidentiary foundation. Where there is no subsequent challenge to good faith, the error may turn out to be harmless; where there is such a challenge—as here and in *Thomas*—the error could be fatal. Without such affirmative findings, the ramifications should be obvious: no safe harbor; Section 363(m) places no limits on appellate review and appellate remedies.

For the foregoing reasons, the Motion to Dismiss is DENIED.