**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. EC-18-1344-BGF |
| WILLIAM A. LANDES, | Bk. No. 17-22481 |
| Debtor. | |
| ESSEX BANK, | |
| Appellant, | |
| v. | MEMORANDUM[*] |
| JOHN REGER, Chapter 7 Trustee; WILLIAM A. LANDES; MARIE LANDES, | |
| Appellees. | |

Argued and Submitted on October 25, 2019
at San Francisco, California

Filed – December 17, 2019

Appeal from the United States Bankruptcy Court
for the Eastern District of California

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

Honorable Michael S. McManus, Bankruptcy Judge, Presiding

Appearances:     Appellant Essex Bank did not appear; Michael Paul Dacquisto argued for appellee John Reger, Chapter 7 Trustee.

Before:     BRAND, GAN and FARIS, Bankruptcy Judges.


## INTRODUCTION

Appellant Essex Bank appeals an order approving the sale of certain personal property of the estate to the debtor's ex-spouse under § 363(b).[1] In objecting to the sale, Essex Bank maintained that it held a security interest in the property being sold and therefore was entitled to the proceeds. In approving the sale, the bankruptcy court determined that Essex Bank did not have a lien on the property at issue; thus, Essex Bank was entitled to nothing. Appellees contend that the appeal is statutorily or equitably moot.

We conclude that the appeal is not moot. Further, the bankruptcy court misapplied California law with respect to Essex Bank's lien under Cal. Civ. Code P. ("CCP") § 708.410. Accordingly, we REVERSE.

////

////

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

# I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.      The parties, Essex Bank's judgment and the bankruptcy filing**

William Landes filed a chapter 7 bankruptcy case on April 14, 2017. John Reger ("Trustee") was appointed as the chapter 7 trustee. The case was designated as an "asset case."

In 2011, William's estranged wife, Marie,[2] filed a petition for dissolution of marriage in the California state court ("Divorce Case"). The Divorce Case is still pending. Prior to the petition date, the divorce court had not approved an agreement dividing the marital estate between William and Marie and had not characterized any property as community or separate. Thus, all community property in the Divorce Case at the time William filed his petition was property of the bankruptcy estate and subject to administration by Trustee.[3] Marie is a priority unsecured creditor in William's chapter 7 case, with a significant claim for domestic support obligations. She filed a proof of claim for domestic support arrears of $186,000.

At some point, Essex Bank loaned William money. On September 22, 2015, Essex Bank obtained a judgment from the California state court against

---

[2] We refer to Mr. Landes as William and Ms. Landes as Marie for clarity. No disrespect is intended.

[3] *See Dumas v. Mantle (In re Mantle)*, 153 F.3d 1082, 1085 (9th Cir. 1998) ("For purposes of § 541(a)(2), all community property not yet divided by a state court at the time of the bankruptcy filing is property of the bankruptcy estate."). For this reason, we reject (as did the bankruptcy court) Essex Bank's argument that the sale of any personal property, including the guns and artwork, should have occurred in the Divorce Case.

William for $739,994.08 ("Judgment"). Prior to the petition date, Essex Bank (1) recorded an Abstract of Judgment, (2) filed a Notice of Judgment Lien ("JL-1") with the California Secretary of State, and (3) filed a Notice of Lien in the Divorce Case (Form EJ-185) ("Notice of Lien"). The proof of service for the Notice of Lien indicates that Essex Bank served both William's and Marie's divorce counsel with the Notice of Lien.

**B.      Pertinent events in the bankruptcy case prior to the sale**

After the § 341(a) meeting of creditors, William filed an amended Schedule A/B to include a "fine art collection" valued at $20,000 and "firearms" valued at $10,000. He filed an amended Schedule C to include an $8,000 exemption in the artwork under CCP § 704.040. No one objected to William's claimed exemption.

Essex Bank filed a $857,159.86 secured proof of claim for the Judgment. Attached were copies of the Judgment, Abstract of Judgment, and the JL-1. Essex Bank filed an amended proof of claim to include the previously missing copy of the Notice of Lien. Trustee did not object to Essex Bank's claim.

**C.      Trustee's sale motion**

Trustee moved to sell the estate's interest in the guns and artwork to Marie for $20,000 ("Sale Motion"). He maintained that these items were community property owned by both William and Marie. Trustee stated that William did not schedule any liens against the personal property at issue and that Trustee was not aware of any liens. William would receive his claimed

4

exemption of $8,000 from the sale proceeds.

Trustee asserted that the $20,000 "price [was] at or near the present maximum obtainable price for the Property" based on information provided by a potential auctioneer. He did not articulate how many guns or pieces of art were involved in the sale, but a letter dated August 2, 2017, from Marie's divorce attorney to Trustee and attached to the Sale Motion indicates that there were approximately 46 guns and 36 pieces of art. The sale was subject to overbids.

Trustee submitted a brief declaration in support of the Sale Motion and a copy of the parties' buy/sell agreement. The declaration was silent as to the negotiation process with Marie, and Trustee did not request a § 363(m) good-faith finding on her behalf. The buy/sell agreement stated that the sale was "on an 'as is' and 'where is' basis with no representations or warranties of any kind."

Essex Bank opposed the Sale Motion. It argued that the Judgment was a community debt for which both William and Marie were responsible, and that it had a lien on the guns and artwork under several theories, including the Notice of Lien filed in the Divorce Case. Essex Bank argued that the Notice of Lien prevented William from selling community property to Marie with the proceeds going to someone other than Essex Bank. Based on William's claimed exemption and administrative expenses, Essex Bank argued that it would receive nothing from the sale. Essex Bank also

questioned whether the sale was negotiated at arms' length given that the buyer was William's estranged wife.

In reply, Trustee argued that Essex Bank failed to establish a lien on the guns and artwork under its asserted theories. First, argued Trustee, the Judgment was a money judgment only and did not create any lien rights in favor of Essex Bank against the personal property being sold. Second, argued Trustee, the Abstract of Judgment created a judgment lien on real property only, not personal property. Third, argued Trustee, the JL-1 filed with the California Secretary of State created a judgment lien on certain personal property but not the guns and artwork being sold. Finally, the sale did not fall within the meaning of CCP § 708.410;[4] it was not a "cause of action" for money or property that was the subject of the Divorce Case and was not part of any judgment in the Divorce Case. Therefore, argued Trustee, the Notice of Lien did not provide Essex Bank with a lien on the subject property either.

No other bidders appeared at the sale hearing. Counsel for Trustee conceded that Marie, as the highest priority unsecured creditor with her large DSO claim, would receive whatever sale proceeds were left after Trustee paid

---

[4] Specifically, CCP § 708.410 (a) provides that a judgment creditor who has a money judgment against a judgment debtor who is a party to a pending action or special proceeding may obtain a lien, to the extent required to satisfy the judgment creditor's money judgment, on either: (1) any cause of action of such judgment debtor for money or property that is the subject of the action or proceeding; or (2) the rights of such judgment debtor to money or property under any judgment subsequently procured in the action or proceeding.

6

William his $8,000 exemption and administrative expenses.

After the sale hearing, the bankruptcy court entered its Civil Minutes granting the Sale Motion. The court ruled that Essex Bank had failed to establish collusion or that William should not be paid on account of his unchallenged claimed exemption. The court also found that Essex Bank had failed to establish a security interest in the guns or artwork under any lien theory it raised. Accordingly, as an unsecured creditor, Essex Bank would receive nothing from the sale because Marie's DSO claim had to be paid ahead of other unsecured claims under § 507. Essex Bank timely appealed the court's later written order ("Sale Order").

## D.    Post-appeal events

Essex Bank did not seek a stay of the Sale Order pending appeal. Although the sale has been consummated, counsel for Trustee confirmed that he is holding the proceeds pending the outcome of the appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(K) and (N). Subject to our discussion of mootness below, we have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1.    Is the appeal moot?

2.    Did the bankruptcy court abuse its discretion in granting the Sale Motion?

7

## IV. STANDARDS OF REVIEW

We review de novo our own jurisdiction, including the question of mootness. *Suter v. Goedert*, 504 F.3d 982, 985 (9th Cir. 2007); *Ellis v. Yu (In re Ellis)*, 523 B.R. 673, 677 (9th Cir. BAP 2014).

The question whether a purchaser is a good faith purchaser under § 363(m) is a question of fact we review for clear error. *Thomas v. Namba (In re Thomas)*, 287 B.R. 782, 785 (9th Cir. BAP 2002).

We review § 363 sale orders for an abuse of discretion. *Fitzgerald v. Ninn Worx Sr, Inc. (In re Fitzgerald)*, 428 B.R. 872, 880 (9th Cir. BAP 2010). A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or makes factual findings that are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *See TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 832 (9th Cir. 2011) (citing *United States v. Hinkson*, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

## V. DISCUSSION

### A. The appeal is not moot.

Trustee argues that the appeal is statutorily moot under § 363(m), because Essex Bank failed to seek a stay pending appeal. Alternatively, he argues that the appeal is equitably moot, because Essex Bank failed to seek a stay, the sale has been consummated, and it would be "extremely difficult" to unwind it. We conclude that the appeal is neither statutorily moot nor

equitably moot.

### 1. The appeal is not statutorily moot.

Section 363(b)(1) permits a bankruptcy trustee, after notice and a hearing, to "use, sell, or lease, other than in the ordinary course of business, property of the estate." Further, § 363(m) provides that

> reversal or modification on appeal of an authorization under [§ 363(b)] of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith . . . unless such authorization and such sale or lease were stayed pending appeal.

In short, § 363(m) protects the interests of good faith purchasers who buy property pursuant to a sale authorized under § 363(b) when a party in interest has failed to stay the sale pending appeal.

However, "[e]ven though an appeal from an order approving a sale is moot if the sale has not been stayed and is consummated, there are several exceptions. One exception to the mootness rule is for appeals questioning whether the purchaser purchased the property in good faith." *In re Fitzgerald*, 428 B.R. at 880 (citing *Sw. Prods., Inc. v. Durkin (In re Sw. Prods., Inc.)*, 144 B.R. 100, 102-03 (9th Cir. BAP 1992)). A good faith purchaser is "one who buys 'in good faith' and 'for value.'" *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992). The Ninth Circuit has "defined lack of good faith as 'fraud, collusion . . . or an attempt to take grossly unfair advantage of other bidders.'" *Onouli-Kona Land Co. v. Estate of Richards (In re Onouli-Kona Land Co.)*, 846 F.2d

1170, 1173 (9th Cir. 1988) (quoting *Cmty. Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985)). Essex Bank argues that the sale here lacked good faith, because the assets were subject to a lien that was readily apparent to anyone doing a minimal amount of due diligence; the Notice of Lien filed in the Divorce Case is a matter of public record.

"Good faith" is a factual determination we review for clear error. *In re Thomas*, 287 B.R. at 785. The bankruptcy court's factual finding must be supported by evidence in the record. *In re Fitzgerald*, 428 B.R. at 880-81. "[P]arties who desire the protection of section 363(m) [must] establish an evidentiary record for the bankruptcy court to make the necessary findings of fact and conclusions of law. Correlatively, the opponent of good faith does not have the burden to demonstrate the absence of good faith." *T.C. Inv'rs v. Joseph (In re M Capital Corp.)*, 290 B.R. 743, 745 (9th Cir. BAP 2003).

Trustee did not request, nor did he support with evidence in the record, a finding that Marie was a "good faith" purchaser under § 363(m). And the bankruptcy court made no such finding. Rather, the bankruptcy court found that Essex Bank had failed to establish any collusion between the parties. However, Trustee had the burden of proof on the issue of good faith as the proponent of the sale. *Id.* at 747. While no bankruptcy judge would approve a sale that does not appear to be in good faith, and an actual finding of "good faith" is not an essential element of a sale under § 363(b), "[u]nless and until 'good faith' had been determined, the appeal is not moot under § 363(m)." *In*

10

*re Thomas*, 287 B.R. at 785. The appellate court will not make a finding of good faith (or lack thereof) in the first instance on appeal, "because determination of section 363(m) good faith is the province of the trial court." *In re M Capital Corp.*, 290 B.R. at 747; *see id.* at 752 ("Without such affirmative findings, the ramifications should be obvious; no safe harbor[.]").

We therefore conclude that the appeal is not statutorily moot under § 363(m).

## 2. The appeal is not equitably moot.

Equitable mootness applies when a comprehensive change of circumstances has occurred so as to render it inequitable for a court to consider the merits of the appeal. *Motor Vehicle Cas. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 677 F.3d 869, 880 (9th Cir. 2012). Equitable mootness is particularly influential in bankruptcy proceedings "where public policy values the finality of bankruptcy judgments because debtors, creditors, and third parties are entitled to rely on a final bankruptcy court order." *Id.* (citing *In re Onouli-Kona Land Co.*, 846 F.2d at 1172). For an appeal to be equitably moot, "[t]he question is whether the case presents transactions that are so complex or difficult to unwind that the doctrine of equitable mootness would apply." *Id.* (internal quotation marks and citation omitted). *See Clear Channel Outdoor, Inc. v. Knupfer (In re PW, LLC)*, 391 B.R. 25, 33 (9th Cir. BAP 2008) (courts examine "the consequences of the remedy and the number of third parties who have changed their position in reliance on the order that is

11

being appealed."). "'Ultimately, the decision whether to unscramble the eggs turns on what is practical and equitable.'" *Id.* (citation omitted).

The Ninth Circuit follows a four-step process to determine whether an appeal is equitably moot:

> We will look first at whether a stay was sought, for absent that a party has not fully pursued its rights. If a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred. Next, we will look to the effect a remedy may have on third parties not before the court. Finally, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court.

*In re Thorpe Insulation Co.*, 677 F.3d at 881. Although *Thorpe* focused on plan consummation, we believe the same general principles apply to any equitable mootness analysis, including appeals of orders concerning sales under § 363. *See Bonnett v. Gillespie (In re Irish Pub-Arrowhead, LLC)*, BAP No. AZ-13-1024-PaKuD, 2014 WL 486955, at *5 (9th Cir. BAP Feb. 6, 2014) (applying *Thorpe* to a § 363(f) sale order).

Trustee argues that the appeal is equitably moot because (1) Essex Bank failed to seek a stay of the Sale Order and (2) the sale has been consummated and would be "extremely difficult" to unwind. Trustee has not met his burden.

While it is undisputed that Essex Bank failed to seek a stay of the Sale Order, which weighs in favor of mootness, this is not necessarily fatal to its

12

appeal. Ninth Circuit authority on this issue demonstrates that while an appellant's failure to seek a stay pending appeal, at least without an adequate excuse, may render an appeal equitably moot and require dismissal, "there must also be some subsequent event that would render consideration of the issues on appeal inequitable, and thereby trigger an equitable mootness analysis." *The Zuercher Tr. of 1999 v. Kravitz (In re Zuercher Tr. of 1999)*, BAP No. NC-13-1299-PaJuKu, 2014 WL 7191348, at *7 (9th Cir. BAP Dec. 17, 2014) (string citation omitted). *See also Yang Jin Co. v. Miller (In re Kong)*, BAP No. CC-15-1371-KiTaL, 2016 WL 3267588, at *6 (9th Cir. BAP June 6, 2016) (discussing *Rev Op Grp. v. ML Manager LLC (In re Mortgs., Ltd.)*, 771 F.3d 1211, 1214 (9th Cir. 2014) and reasoning that it does not stand for the proposition that an appeal is *always* equitably moot if the appellant fails to seek a stay).

While Essex Bank offers no excuse for failing to seek a stay, no subsequent event has occurred here that would render consideration of the issues on appeal inequitable. Even though the sale has been completed, Trustee has not distributed the proceeds. Further, there are no third parties who would have received any proceeds if distributed, and the parties that could conceivably be affected by any modification to the Sale Order are before the Panel. Marie, as the largest priority unsecured creditor, would be the only creditor paid out of the proceeds after administrative expenses. Finally, the transaction at issue here — the exchange of money for guns and artwork — is not complex or difficult to unwind, much less "extremely

13

difficult" as Trustee contends. Marie could return the guns and artwork to the bankruptcy estate, and Trustee could return the $20,000 to Marie. In short, no comprehensive change of circumstances has occurred in this case to render reversing the Sale Order inequitable.

Accordingly, we conclude that the appeal is not equitably moot.

**B.    The bankruptcy court abused its discretion in granting the Sale Motion.**

Essex Bank opposed the Sale Motion based on its purported lien on the guns and artwork being sold. The bankruptcy court began its ruling by noting that the Sale Motion did not ask for a sale free and clear of liens, but it then proceeded to find that Essex Bank did not have a lien on the subject personal property under any of its alleged theories.

We agree with the bankruptcy court that the Abstract of Judgment did not give Essex Bank a lien on any personal property of the estate. *See* CCP § 697.310(a) ("Except as otherwise provided by statute, a judgment lien on *real property* is created under this section by recording an abstract of a money judgment with the county recorder.") (emphasis added). Essex Bank argues that some of the guns or artwork might be "fixtures" attached to the real property, thus making the items real property. Essex Bank failed to raise that argument before the bankruptcy court and therefore has waived it on appeal. *See Orr v. Plumb*, 884 F.3d 923, 932 (9th Cir. 2018) (usual rule is that arguments raised for the first time on appeal are deemed forfeited). Further, whether the guns or artwork are "fixtures" is a factual issue, and the record is insufficient

14

to make that finding. *See Briggs v. Kent (In re Prof'l Inv. Props. of Am.)*, 955 F.2d 623, 625 (9th Cir. 1992) (appellate court may consider an issue raised for first time on appeal where "the issue presented is purely one of law and either does not depend on the factual record developed below, or the pertinent record has been fully developed").

We also agree with the bankruptcy court that the JL-1 did not create a lien on the guns and artwork. In California, a JL-1 lien is similar to a UCC-1 lien and provides a judgment lien on a variety of personal property. *See* CCP § 697.530.[5] Essex Bank argued at the sale hearing that the buy/sell agreement constituted an "accounts receivable" to William, which was covered by its JL-1 lien. The court disagreed, finding that the postpetition contract between Trustee on behalf of the bankruptcy estate and Marie was not a contract or receivable of William. And even if it was, the JL-1 lien did not encumber

---

[5] CCP § 697.530 provides:

(a) A judgment lien on personal property is a lien on all interests in the following personal property that are subject to enforcement of the money judgment against the judgment debtor pursuant to Article 1 (commencing with Section 695.010) of Chapter 1 at the time when the lien is created if the personal property is, at that time, any of the following:
(1) Accounts receivable, and the judgment debtor is located in this state.
(2) Tangible chattel paper, as defined in paragraph (79) of subdivision (a) of Section 9102 of the Commercial Code, and the judgment debtor is located in this state.
(3) Equipment, located within this state.
(4) Farm products, located within this state.
(5) Inventory, located within this state.
(6) Negotiable documents of title, located within this state.

15

postpetition assets. § 552(a).

However, we disagree with the bankruptcy court's ruling that the Notice of Lien did not create a lien on the guns and artwork and that Essex Bank was a general unsecured creditor and not entitled to any of the sale proceeds. The bankruptcy court concluded that CCP § 708.410 liens do not apply to marital dissolution proceedings, and therefore Essex Bank could not have had a lien on the subject property. We review this question of law de novo. We begin by discussing this type of California lien.

If a judgment creditor has a money judgment against a judgment debtor who is a party to a pending action or special proceeding, the creditor may acquire a lien to the extent necessary to satisfy the judgment on (a) any cause of action of the debtor for money or property that is the subject of the action or proceeding, and (b) the rights of the debtor to money or property under any judgment subsequently procured in the action or proceeding. CCP § 708.410(a); 8 Witkin, Cal. Proc., *Enforcement of Judgment* § 297 (5th ed. 2008). The judgment debtor can be the plaintiff or the defendant. *Fleet Credit Corp. v. TML Bus. Sales, Inc.*, 65 F.3d 119, 121 (9th Cir. 1995). An action or proceeding remains "pending" until the time for appeal expires or an appeal is finally determined. CCP § 708.410(d).

To obtain this type of lien, the judgment creditor files in the pending action or proceeding a notice of lien and an abstract or certified copy of the judgment creditor's money judgment. CCP § 708.410(b). The judgment

creditor must also serve a copy of the filed notice of lien on all of the parties to the "action or special proceeding. . . . " CCP § 708.410(a). The notice of lien must contain certain language, which serves as a notice to the judgment debtor of his or her rights. CCP § 708.420.[6]

---

[6] CCP § 708.420 provides:

The notice of lien under Section 708.410 shall contain all of the following:

(a) A statement that a lien has been created under this article and the title of the court and the cause and number of the pending action or proceeding in which the notice of lien is filed.
(b) The name and last known address of the judgment debtor.
(c) The name and address of the judgment creditor.
(d) The title of the court where the judgment creditor's money judgment is entered and the cause and number of the action, the date of entry of the judgment, and the date of any subsequent renewals, and where entered in the records of the court.
(e) The amount required to satisfy the judgment creditor's money judgment at the time the notice of lien is filed in the action or proceeding.
(f) A statement that the lien attaches to any cause of action of the judgment debtor that is the subject of the action or proceeding and to the judgment debtor's rights to money or property under any judgment subsequently procured in the action or proceeding.
(g) A statement that no compromise, dismissal, settlement, or satisfaction of the pending action or proceeding or any of the judgment debtor's rights to money or property under any judgment procured therein may be entered into by or on behalf of the judgment debtor, and that the judgment debtor may not enforce the judgment debtor's rights to money or property under any judgment procured in the action or proceeding by a writ or otherwise, unless one of the following requirements is satisfied:
    (1) The prior approval by order of the court in which the action or proceeding is pending has been obtained.
    (2) The written consent of the judgment creditor has been obtained or the judgment creditor has released the lien.

(continued...)

17

Assuming the judgment creditor has complied with the necessary requirements to obtain and perfect the lien, and the lien has not been terminated for any reason, "no compromise, dismissal, settlement, or satisfaction" of the action or proceeding may be entered into by or on behalf of the debtor, unless (a) the court in which the action or proceeding is pending has given prior approval, (b) the creditor has consented in writing or has released the lien, or (c) the creditor's money judgment has been satisfied. CCP § 708.440(a), (b). If the court determines that a party (other than the debtor) with notice of the lien has transferred property subject to the lien or paid an amount to the debtor that was subject to the lien, the court must render judgment against the party equal to the lesser of (a) the value of the debtor's interest in the property or the amount paid, or (b) the amount of the creditor's lien. CCP § 708.470(c).

It is undisputed, and the record establishes, that Essex Bank did everything required to obtain and perfect a lien under CCP § 708.410. It filed the Notice of Lien, which contained the necessary language under CCP § 708.420, and a copy of the Abstract of Judgment in the Divorce Case. It also served the Notice of Lien on the parties to the Divorce Case, including Marie

---

[6](...continued)
        (3) The money judgment of the judgment creditor has been satisfied.
   (h) A statement that the judgment debtor may claim an exemption for all or any portion of the money or property within 30 days after the judgment debtor has notice of the creation of the lien and a statement that, if the exemption is not claimed within the time allowed, the exemption is waived.

and her divorce counsel. No one has asserted that William sought or obtained an exemption from the lien in accordance with CCP § 708.450.[7] Thus, the lien appears to be prima facie valid.

Trustee proceeded under the belief that no liens existed on the personal property at issue in the sale. When he learned of one through Essex Bank's opposition to the Sale Motion, he made no attempt to sell the property free and clear of liens under § 363(f), or to file an adversary proceeding to determine the validity and extent of the lien, or both; he simply argued that the lien did not exist. Trustee's counsel maintained at oral argument before us that this was not a "free and clear" sale, and that if Essex Bank had a lien, it remains attached to the property.

The bankruptcy court could have ordered that the sale was subject to Essex Bank's lien. However, it went further and ruled, without citing any authority, that Essex Bank did not have a CCP § 708.410 lien on the guns and artwork being sold, because the Divorce Case was not a "cause of action . . . for money or property" as contemplated by the statute; it was "an action for the dissolution of marriage." That was the only basis for the court's ruling, and it was erroneous.

While a marital dissolution proceeding might not seem like a "cause of action" that would fall under the statute, California courts have ruled that

---

[7] The judgment debtor can claim all or a portion of the money or property subject to the lien exempt, but must do so within 30 days of receiving notice of creation of the lien. CCP § 708.450.

CCP § 708.410 liens do apply in such proceedings. *See In re Marriage of Katz*, 234 Cal. App. 3d 1711, 1719-21 (1991) (ruling that CCP § 708.410 liens and the associated remedies apply in marital dissolution proceedings and that wife's transfer to husband of more than one-half of community property interest during dissolution proceeding gave rise to liability to judgment creditor under CCP § 708.470(c)); *In re Marriage of Kerr*, 185 Cal. App. 3d. 130 (1986) (applying CCP § 708.410 in marital dissolution).

The bankruptcy court erred, and thus abused its discretion, in ruling as a matter of law that Essex Bank did not have a CCP § 708.410 lien on the guns and artwork simply because the Notice of Lien was filed in a marital dissolution proceeding. Accordingly, we must REVERSE the Sale Order.

## VI. CONCLUSION

For the reasons stated above, we REVERSE.

20