**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: COOPER COMMONS, LLC,
                                *Debtor,*

WEINSTEIN, EISEN & WEISS, LLP,
                                *Appellant,*

v.

DAVID A. GILL, Chapter 11
Trustee; COMERICA BANK,
                                *Appellees.*

No. 03-56818

BAP No.
CC-03-01090-PKD

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Perris, Klein, and Dunn, Bankruptcy Judges, Presiding

Argued and Submitted
May 4, 2005—Pasadena, California

Filed September 13, 2005

Before: Diarmuid F. O'Scannlain and
Kim McLane Wardlaw, Circuit Judges, and
Charles C. Lovell,* District Judge.

Opinion by Judge O'Scannlain

*The Honorable Charles C. Lovell, United States District Judge for the District of Montana, sitting by designation.

**COUNSEL**

David R. Weinstein, Los Angeles, California, argued the cause for the appellant; David R. Weinstein and Leonard Peña, Los Angeles, California, were on the briefs.

Joel R. Ohlgren, Los Angeles, California, argued the cause for the appellees; John J. Bingham, Jr., John N. Tedford, IV, and David J. McCarty, Los Angeles, California, were on the briefs.

**OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether a lender to a bankrupt condominium development can effectively specify that post-petition loans it makes may be used only for certain purposes.

I

Cooper Commons, LLC, voluntarily entered Chapter 11 bankruptcy on February 22, 2002. Its business consisted of the construction and sale of a 62-unit condominium development in West Hollywood, California. Its principal creditor was Comerica Bank, which has a senior security interest in the development.

Cooper Commons acted as debtor-in-possession for nine months, until the appointment of David A. Gill as trustee. During this period, Weinstein, Eisen and Weiss, LLP, ("the Weinstein firm"), acted as its general counsel and helped Cooper Commons negotiate three agreements, or stipulations, with Comerica Bank for continued financing necessary to the completion of the condominiums.

In the first stipulation, Comerica agreed that Cooper Commons could use some $50,000 of such continued financing to pay for the services of retained professionals like the Weinstein firm. This provision carried over into the other two stipulations.

On January 3, 2003, Gill, as trustee, filed a motion asking the bankruptcy court to approve additional financing from Comerica. Gill explained that he needed roughly $4.25 million to finish construction on the condominiums, plus an additional $888,469 to pay for "the reasonable value of the services *provided and to be provided by [Gill] and his professionals*" (emphasis added). Gill attached a spreadsheet to the motion breaking down the estimated services, which were apportioned between Gill and the various professionals that he had hired. No mention was made of the Weinstein firm. In due course the Weinstein firm received a copy of Gill's January 3 motion and the attached spreadsheet.

The bankruptcy court set the motion for hearing on February 5, 2003 and ordered Gill to circulate notice. Gill's notice was circulated on January 21, 2003, and stated that full details of the subject matter of the hearing could be found in the January 3 motion and attachments. In due course the Weinstein firm received the January 21 notice.

On January 31, 2003, Gill filed and circulated a final version of the specific financing agreement he proposed for approval. He now sought a total of $5,741,220 in loans, although the portion set aside for his expenses, and the expenses of his professionals, was still set at $888,469. In due course the Weinstein firm received this January 31 document.

At the February 5, 2003, hearing, the Weinstein firm objected to the proposed arrangement in which the $888,469 was set aside only for the trustee and his professionals, excluding the Weinstein firm and other prior professionals of the bankruptcy estate. The Weinstein firm also objected to

what it felt was inadequate notice, since it stated that (1) it had not received the January 31 document until February 3, 2003, and (2) the January 3 motion and the January 21 notice had not stated with adequate clarity that the Weinstein firm would not be paid out of the proposed loan.

The bankruptcy court rejected the Weinstein firm's arguments and entered a final order approving the proposed financing. The bankruptcy judge found that "the post-petition financing has been negotiated in good faith and at arms'-length . . . . Any credit extended . . . shall be deemed to have been extended . . . in good faith . . . ." The bankruptcy judge also found that the proposed financing arrangement was fair and reasonable; that the bankruptcy estate's value increased because of it but would decrease without it; and that it left none of the bankruptcy estate's creditors worse off than they would have otherwise been.

The Weinstein firm appealed to the Bankruptcy Appellate Panel ("BAP"), which held that the firm had not been denied due process, because the January 3 and January 21 filings had provided sufficient notice, and rejected the firm's substantive claims because it had not adequately raised them before the bankruptcy court. From that BAP order, the Weinstein firm filed this timely appeal.

## II

The Weinstein firm first claims a due process violation based on its alleged late notice that it would be shut out from the distribution of the $888,469.

This argument fails. The information that the Weinstein firm received on January 31 was not materially different from the January 3 motion, which set forth how the sum would be used. The January 3 motion expressly provided that

> [i]n addition, the Trustee estimates that the expenses to the estate for the reasonable value of the services

*provided and to be provided by himself and his professionals* for the legal and administrative tasks required directly related to construction, marketing and sales . . . as well as those tasks relating to the duties required of the Trustee . . . will amount to approximately $888,469 . . . .

(emphasis added). In fact, the spreadsheet attached to the January 3 motion carefully itemized the various expenses that Gill and his various professionals had incurred or would incur and the Weinstein firm was not listed. The Weinstein firm's arguments that the January 3 motion provided less information than the January 31 document are without merit.

**[1]** At best, the Weinstein firm was entitled to notice reasonably calculated to inform it that the additional funds from Comerica would be applied only to Gill and his professionals, with such notice given sufficiently ahead of the hearing date that it could prepare objections. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). We are satisfied that the Weinstein firm was on notice of its exclusion from the proposed financing arrangement when it received the January 3 motion. There was no due process violation.

III

**[2]** The Weinstein firm also contends that the financing arrangement would violate 11 U.S.C. § 507(a)(1) because that section gives equal priority to the administrative claimants like Gill, his professionals, and the Weinstein firm while the financing arrangement does not. Because the financing arrangement is a post-bankruptcy extension of credit under 11 U.S.C. §364, Gill and Comerica respond that the Weinstein firm's substantive claims are mooted by 11 U.S.C. § 364(e) which provides as follows:

The reversal or modification on appeal of an authorization under this section to obtain credit or incur

> debt, or of a grant under this section of a priority or a lien, *does not affect the validity of any debt so incurred*, or any priority or lien so granted, to an entity that extended such credit in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and the incurring of such debt, or the granting of such priority or lien, were stayed pending appeal.

*Id.* (emphasis added). Thus, they contend, Weinstein has no remedies because it failed to obtain a stay of the bankruptcy court's order pending the appeal and because the bankruptcy court expressly found that Comerica extended credit in good faith. Weinstein's claim is therefore mooted, they urge, because any relief the Weinstein firm seeks would "affect the validity of [the] debt." *See Bennett v. Gemmill (In re Combined Metals Reduction Co.)*, 557 F.2d 179, 187 (9th Cir. 1977) (holding that appeals are moot when appellate courts can provide no effective relief).

A

Specifically, the Weinstein firm seeks three different kinds of relief. It first asks that we declare the financing agreement invalid and order Gill and Comerica to renegotiate, this time without ignoring the claims of the bankruptcy estate's prior professionals. Second, as an alternative, it asks us to order that the $888,469 earmarked for Gill and his professionals be distributed pro rata among *all* the administrative claimants, including the Weinstein firm, or even that it be given a larger share. Third, in yet another alternative, it requests that we order Comerica to loan additional money sufficient to cover the Weinstein firm's demands, subject to the same terms as in the existing loan.

1

**[3]** The first relief sought—invalidating the financing agreement—would clearly "affect the validity of any debt incurred" and therefore fails, mooted by § 364(e).

2

**[4]** What about the second and the third claims for relief? We held in *In re Adam's Apple, Inc.,* 829 F.2d 1484 (9th Cir. 1987), that § 364(e) broadly protects any requirement or obligation that was part of a post-petition creditor's agreement to finance.[1] At issue in *In re Adam's Apple* was an interim financing agreement in which Central Washington Bank agreed to advance $450,000 in funds to an apple-grower debtor, in exchange for converting the bank's pre-petition unsecured debt to secured debt. *Id.* at 1486. The court explained that it could not reach the legality of cross-collateralization until it first decided whether the case was moot, i.e., whether there was any available remedy not barred by § 364(e). *Id.* at 1489 n.7. It concluded it could not invalidate the new security that had been granted Central Washington Bank without "affect[ing] the validity" of the new debt. The court reasoned that "[s]ection 364 was designed to provide a debtor a means to obtain credit after filing bankruptcy," and therefore that any agreements or conditions necessary to obtain that credit were protected by § 364(e). *Id.* at 1488. The court explained, citing *Matter of EDC Holding Company*, 676 F.2d 945, 947 (7th Cir. 1982), that "the purpose of 364(e) was to overcome a good faith lender's reluctance to extend financing in a bankruptcy context by permitting reliance on a bankruptcy judge's authorization." *Id.* Since protecting the validity

---

[1]Two of our sister circuits have adopted our approach. *See In re Ellingsen MacLean Oil Co., Inc.*, 834 F.2d 599, 600-01 (6th Cir. 1987) (where a bank extended post-petition financing in return for the waiver of any right to challenge its pre-petition liens, extending the protection of § 364(e) to both the post-petition debt and the waiver); *In re Revco D.S., Inc.*, 901 F.2d 1359, 1364 (6th Cir. 1990) (explaining that in "reviewing financing orders subject to section 364(e) [courts] have been reluctant to sever individual provisions"); *In re Western Pacific Airlines, Inc.*, 181 F.3d 1191, 1195 (10th Cir. 1999) (holding that "§ 364(e) prohibits not only outright invalidation of a lien or priority . . . , but also modification of the terms"). *But see Matter of Saybrook Mfg. Co., Inc.*, 963 F.2d 1490 (11th Cir. 1992).

of any clause of the debt agreement that might have motivated the creditor to extend the credit served this purpose, it followed that § 364(e) protected the cross-collateralization clauses and the appeal was indeed moot. *Id.*

[5] In the case before us, it follows that any provisions of the financing agreement that Comerica might have bargained for or that helped to motivate its extension of credit are protected by § 364(e). The provisions that would be affected by the Weinstein firm's second and third proposed remedies—those directing that up to $888,469 go to Gill and his professionals, requiring that unused funds be returned to Comerica, and setting the total loan amount—are just such provisions. Comerica's motive in lending money was to ensure the completion of the condominium project; payments to professionals whose services were no longer retained would not likely help. Further, since any unused funds were to be returned to Comerica, it was clearly in Comerica's interest to limit the number of claimants. Comerica's interest in loaning only the amount it agreed on and not some larger sum is also transparent. We conclude that the financing agreement cannot be undone, the $888,469 cannot be ordered redistributed, and the loan amount cannot be adjusted upward—and therefore that Weinstein's second and third requested forms of relief are also unavailable.

B

[6] Since the Weinstein firm has failed to secure a stay, all that remains under § 364(e) is to review whether Comerica acted in good faith. "[T]o determine good faith we look to the integrity of an actor's conduct during the proceedings. Misconduct defeating good faith includes fraud, collusion, or an attempt to take grossly unfair advantage of others. A creditor fails to act in good faith if it acts for an improper purpose. Knowledge of the illegality of a transaction also defeats good faith." *In re Adam's Apple*, 829 F.2d at 1489 (citations and internal marks of quotation omitted). Importantly, *In re*

*Adam's Apple* establishes that we presume the post-bankruptcy creditor's good faith and then inquire to see whether the presumption can be overcome. *See id.* at 1490-91. *In re Adam's Apple* rejected the appellant's argument that, because of the "fundamental tenet of bankruptcy law that like creditors must be treated alike," the creditor had known it was acting illegally in asking for priority treatment of its pre-petition debt in return for its post-petition loan. *Id.* at 1490. Since this is essentially the same as the Weinstein firm's argument that Comerica must have believed it was acting illegally in treating Gill and his professionals differently from the bankruptcy estate's prior professionals, the Weinstein firm's lack-of-good-faith argument on that count fails. Similarly, *In re Adam's Apple* also rejected appellant's argument that the bank acted in bad faith because it entered into the financing agreement even though other creditors objected. *Id.* at 1491. Thus, Comerica is entitled to a presumption of good faith. In any event, the bankruptcy court made an express finding that Comerica acted in good faith.

Remarkably, the BAP rejected both the *In re Adam's Apple* presumption and the bankruptcy court's finding, erroneously concluding that Comerica bore the burden to demonstrate good faith because of *M Capital Corp.*, 290 B.R. 743 (9th Cir. BAP 2003).[2] But a BAP ruling cannot override circuit precedent, and *M Capital Corp.* may not be preferred to *In re Adam's Apple*.

[7] As we held in *In re Casserino,* 379 F.3d 1069, 1072 (9th Cir. 2004), on appeal from the BAP, we independently review the bankruptcy court's findings for clear error. While the BAP held that the bankruptcy court's good-faith finding was clearly erroneous, it pointed to no specific evidence in the record suggesting bad faith and failed to acknowledge that the

---

[2]*M Capital Corp.* was interpreting 11 U.S.C. § 363(m), not § 364(e), but the two sections have nearly identical language and are to be interpreted in tandem. *See In re Adam's Apple*, 829 F.2d at 1489.

bankruptcy court had repeated dealings with the parties and was in a position to judge their motives and character. We therefore defer to the bankruptcy court's finding that Comerica acted in good faith for the purposes of § 364(e).

**[8]** Section 364(e) moots Weinstein's substantive claims.

## IV

The Weinstein firm received adequate notice of the financing agreement and its substantive objections to the agreement are moot.

**AFFIRMED IN PART; DISMISSED IN PART.**