**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NC-13-1299-PaJuKu |
| THE ZUERCHER TRUST OF 1999, | Bankr. No. 12-32747-HLB |
| Debtor. | |

| | |
|---|---|
| THE ZUERCHER TRUST OF 1999, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| PETER S. KRAVITZ, Chapter 11 Trustee; WIN WIN ALEXANDRIA UNION, LLC, | |
| Appellees. | |

Argued and Submitted on October 23, 2014,
at San Francisco, CA

Filed - December 17, 2014

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Hannah L. Blumenstiel, Bankruptcy Judge, Presiding

Appearances:    Bradley Kass of Kass & Kass Law Offices argued for appellant The Zuercher Trust of 1999; Reagan Elizabeth Boyce of Ezra Brutkus Gubner LLP argued for appellee Peter S. Kravitz; Elsa Horowitz of Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP argued for appellee Win Win Alexander Union, LLC.

Before: PAPPAS, JURY, and KURTZ, Bankruptcy Judges.

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Chapter 11[2] debtor The Zuercher Trust of 1999 ("Debtor") appeals the order of the bankruptcy court approving the trustee's sale of two real properties under § 363. We conclude that the bankruptcy court did not err in finding in the sale order that creditor Win Win Alexandria Union, LLC ("Win Win") at the time of the sale order was a good faith purchaser for purposes of § 363(m). However, consistent with our precedent, we must REMAND this matter to the bankruptcy court to decide whether it should reconsider its good faith finding based upon events and facts occurring after entry of the sale order.

## I. FACTS

### A. Background

Debtor, a business trust, owns and develops real estate in California. Its managing member is Monica Hujazi ("Hujazi"). At issue in this appeal is the bankruptcy court's approval of the sale of two Los Angeles properties owned by Debtor, one located on Alexandria Avenue (the "Alexandria Property"), and the other on Union Avenue (the "Union Property" and, together, the "Properties").

On June 24, 2005, East West Bank loaned $4,250,000 to Debtor and co-borrower Hujazi (the "Alexandria Note") secured by a deed of trust against the Alexandria Property. The same day, East West Bank loaned Debtor and Hujazi $2,254,000 (the "Union Note")

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all Rule references are to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, and all Civil Rule references are to the Federal Rules of Civil Procedure 1–86.

secured by a deed of trust against the Union Property.

Debtors operated the Properties as apartment complexes. On November 15, 2010, Debtor and Hujazi defaulted under the terms of the Alexandria and Union Notes by failing to pay the amounts due. In February of 2011, East West Bank assigned the Notes and the trust deeds securing them to Win Win. By that time, the Properties had been placed involuntarily into the Rent Escrow Account Program ("REAP") by the Los Angeles Housing Department. See L.A., CAL. HOUSING CODE § 162.00 et seq. REAP is an enforcement tool used to ensure that landlords adequately maintain rental properties and to bring improperly maintained properties with building and safety code violations into compliance. While a property is enrolled in REAP, rents from tenants are not paid to the landlord/owner but, instead, into a city trust fund.

Win Win filed a complaint in state court for, inter alia, judicial foreclosure of the trust deeds on the Properties and the appointment of a receiver, alleging that, in addition to the default on its loan obligations, Debtor was not taking the necessary steps to maintain the Properties and that there was a need to remedy building and safety code violations in order to remove the Properties from the REAP program. Win Win Alexandria Union, LLC v. Hujazi, case no. BC 456257 (Los Angeles Super. Ct. March 1, 2011). After a contested hearing, on March 16, 2011, the state court granted Win Win's request to appoint a receiver and entered an order appointing Kevin Singer ("Receiver"). Win Win was ordered by the state court to pay all costs of the receivership as well as the costs of the required repairs and

-3-

corrections to bring the Properties into compliance so they could be removed from REAP. Win Win alleges that, since March 1, 2011, it has advanced all fees and costs associated with the receivership and with the rehabilitation of the Properties. On July 26, 2012, the Alexandria Property was released from REAP; the Union Property was released from REAP in March 2013.

On September 24, 2012, the state court denied Debtor's request for a stay of the foreclosure proceedings. The Alexandria Property, now out of REAP, was scheduled for a deed of trust sale to occur on September 26, 2012.

## B. The Bankruptcy Case

Debtor filed a petition under chapter 11 of the Bankruptcy Code the day of the trustee's sale. At that time, approximately $7,459,000 was owed on the Alexandria Note and $5,595,000 on the Union Note.

On October 5, 2012, Win Win filed a motion in the bankruptcy court for relief from the automatic stay to continue with its foreclosures, arguing that the Alexandria and Union Properties were over-encumbered; Win Win also sought dismissal of the bankruptcy case. In support of its motion, Win Win provided an accounting of amounts owed under the Notes together with the amounts it had paid to the Receiver and to obtain appraisals of the Properties. According to a declaration of appraiser D. Michael Mason, he valued the Alexandria Property at approximately $5,300,000 and the Union Property at approximately $3,300,000, demonstrating that Debtor lacked equity in both Properties.

Also on October 5, Win Win moved for an order to excuse the

-4-

Receiver's compliance with § 543(d) to turn over the Properties to Debtor and to allow the Receiver to retain control of them. Debtors opposed the motions, arguing that Win Win had inflated the amounts owed under the Notes, that the alleged values for the Properties were too low, and that Debtor should be allowed to recover and rehabilitate the Properties under its reorganization plan which proposed to remodel and convert them to assisted living facilities.

The bankruptcy court conducted a hearing on the Win Win motions on November 27, 2012. After hearing from the parties, the court ruled that Debtor had "grossly mismanaged" the Properties by allowing them to be placed in REAP and then taking no action to cure the violations. The court ordered that the Receiver need not turn over the Properties to Debtor pending further order. In connection with the stay relief motion, as to Debtor's proposal to convert the Properties into assisted living facilities, the court found that Debtor's proposed plan did not appear feasible in light of its lack of the required capital, inability to obtain funding, and Debtor's proposed lack of debt repayment to Win Win during the refinance/renovation period. The court continued the stay relief hearing and directed Debtor to submit certified appraisals for each property if it wished to contest the appraisals offered by Win Win.

On January 10, 2013, the United States Trustee filed a motion to appoint a chapter 11 trustee in the bankruptcy case because Debtor was not meeting its fiduciary obligations, had incomplete schedules, and had grossly mismanaged the bankruptcy estate. At a status conference and continued stay relief hearing

-5-

on September 14, 2013, the bankruptcy court granted the U.S. Trustee's request and indicated that, upon appointment, the chapter 11 trustee would have thirty days to investigate and report to the court whether it should grant relief from stay or whether the trustee should proceed with a sale of the Properties. Acting on the court's order, the U.S. Trustee appointed Peter S. Kravitz chapter 11 trustee ("Trustee") on January 31, 2013.[3] § 1104(d).

### C. The Sale of the Properties

Trustee submitted his report to the bankruptcy court on February 14, 2013. Trustee's investigation included, among others, obtaining two brokers opinions on the value of the Properties, as well as a review of Win Win's certified appraisals, a request to Debtor to provide the details for its plan for capitalizing its proposed conversion of the Properties. In his report, Trustee noted that Debtor had not provided any certified appraisals, did not submit a plan for capitalization of the conversion to assisted living units, and that brokers who were contacted by Trustee at Debtor's request would not submit offers for the Properties for various reasons and, in particular, because the Properties were not ADA compliant. The report concluded, based on the Win Win appraisals, the brokers' opinions obtained by Trustee, and other information available to him, "that, as the Properties stand today, there is no equity available to the estate . . . [and that] Debtor has not responded

---

[3] The order directing appointment of a trustee was not appealed.

to the Trustee's request for a viable plan that will provide a feasible means to effect conversion for [Debtor's proposed uses.]" Trustee noted that, while the bankruptcy court could grant Win Win stay relief so that it could foreclose, such would provide no benefit to the estate. Rather than lose the Properties to foreclosure, Trustee opined that a sale of the Properties could provide some benefit to all concerned, if additional concessions could be obtained from Win Win.

On March 28, 2013, with Win Win's support, Trustee filed a "Motion for Entry of an Order: (a) Approving Sale Procedures and Bid Protections; and (b) Scheduling an Auction and Hearing to Approve the Sale." Debtor promptly objected to any sale of the Properties, contending that Trustee's sale prices were too low and his figures regarding the debt on the Properties were inflated. After a contested hearing on April 11, 2013, the bankruptcy court, on April 25, 2013, entered an "Order Setting Sale and Bid Procedures" (the "Procedures Order"). The salient portions of that order provided that: (A) The Properties would be sold at auction free and clear of all liens, claims, and encumbrances; (B) Win Win would submit opening credit bids of $4,500,000 for the Alexandria Property and $2,700,000 for the Union Property, and could thereafter offer additional credit bids up to $8,000,000 for the Alexandria Property, and $7,100,000 for the Union Property; (C) All auction bidders must submit a "qualified bid," which required that a bid be made no later than one week before the auction, at least $150,000 above the minimum bids for each of the Properties, be accompanied by a deposit of $250,000 for each bid, and provide readily verifiable proof of

-7-

funds for the full amount of the bids; (D) The highest offer at auction will be the final sale price, subject to bankruptcy court approval; (E) If the successful bidder is a party other than Win Win, and the successful bid is less than Win Win's total secured claim on either Property, Win Win will release its liens on both Properties; and (F) Win Win would pay Trustee $50,000 for each Property, which deposit would be nonrefundable unless Win Win was the successful bidder for the full value of its claim on that Property.

On May 2, 2013, Trustee filed a "Motion for Entry of an Order Authorizing and Approving the Sale of the Properties" (the "Sale Motion"). The Sale Motion generally incorporated the terms of the Procedures Order and provided additional information on the purported administrative claims of Win Win, and specified that if the motion was approved, regardless of who was the successful bidder at the auction, Win Win would agree to cap its administrative claims at $50,000.

On May 30, 2013, the hearing on the Win Win stay relief motion and the Sale Motion was held, which was followed by the auction. Because it intended to approve a sale of the Properties, the bankruptcy court deemed the Win Win motion for stay relief or dismissal as moot. The court granted the Sale Motion:

> I find the [Trustee's proposed] sale to be in the estate's best interests, given the savings of litigation costs, [and] the waiver of satisfaction of substantial claims against the estate that would result from the sale. I further find that the trustee's efforts to market the properties was sufficient, given the length of time the properties have been on the market, the estate's resources, and the simple fact that these properties are property of a bankruptcy

-8-

estate.

Hr'g Tr. 30:12-20.

The bankruptcy judge then left the courtroom, whereupon the Trustee conducted the auction. There were no offers other than the Win Win opening offer of $2,700,000 for the Union Property. However, Jonathan Barach, president of Vista Investment Group, LLC ("Vista"), submitted a qualified bid of $6,800,000 for the Alexandria Property, the only bid in excess of the Win Win offer.

After the auction concluded, the bankruptcy judge returned to the courtroom and, after hearing from the parties, directed Trustee to prepare an order approving the sales, which order should recite its conclusions that the successful bidders were good faith purchasers for purposes of § 363(m), that the sale was free and clear of all liens, claims, and encumbrances, and that the usual fourteen-day stay of the order under Rule 6004(h) would be waived.

The bankruptcy court entered the order approving the sale on June 10, 2013 (the "Sale Order"). The Sale Order provided, in relevant part:

3. The Trustee is authorized to sell and transfer to Win Win . . . the Union Property[.]

4. [Vista] is confirmed as the successful bidder for the Alexandria Property. The Trustee is authorized to sell and transfer to Vista or its designee the Alexandria Property [for] $6,800,000[.]

5. Win Win is confirmed as the backup purchaser of the Alexandria Property in the event that the sale of the Alexandria Property to Vista fails to close. In such event, Win Win or its designee is confirmed as the purchaser, and the Trustee is authorized to sell and transfer to Win Win the Alexandria Property [for] $4,500,000.

-9-

7. Win Win and Vista are deemed to be good faith purchasers as that term is used in and for the purposes of 11 U.S.C. § 363(m).

9. Pursuant to 11 U.S.C. § 363(f), effective upon closing, the sale of each and both of the Properties will vest in the respective purchaser all right, title and interest of the Debtor and the bankruptcy estate in the Properties free and clear of all liens, claims, encumbrances or interests[.]

12. This order shall be effective upon its entry, and any stay provided by application of Bankruptcy Rule 6004(h) is waived.

13. Win Win may not assert an administrative claim in the Case for more than $50,000.

Debtor filed a timely notice of appeal of the Sale Order on June 21, 2013. Debtor did not seek a stay pending appeal from either the bankruptcy court or this Panel.

### D. Subsequent Events

The parties strenuously dispute the facts and events following the entry, and Debtor's appeal, of the Sale Order. Because these contentions appear in their appellate pleadings, we acknowledge them here as assertions, but not for their truth.

The parties agree that Trustee was apparently unable to complete the sale of the Alexandria Property to Vista, ostensibly because a tax lien and other issues rendered Trustee unable to obtain insurable title for Vista. As a result, Trustee did not close the sale with Vista and, instead, completed the sale of the Alexandria Property to Win Win as the backup purchaser under the Sale Order.

At some time before July 30, 2013, Win Win apparently sold the Alexandria Property to Alex Court Apartments, LLC ("Alex Court"), which is alleged to be a subsidiary and "designee" of

-10-

Vista, for $6,800,000, the same price as under the Sale Order, and Win Win agreed to pay certain costs and assume the risks related to this appeal. On July 30, 2013, the Sale Order and grant deeds transferring ownership of both Properties to Win Win free and clear of all liens, claims, interests and encumbrances, were recorded. The same day, a grant deed transferring the Alexandria Property from Win Win to Alex Court was recorded.

On August 12, 2013, Trustee filed a motion with this Panel to dismiss this appeal as moot. Debtor opposed the motion. A motions panel ruled that "All relief requested in [Win Win's] motion to dismiss is hereby ORDERED DENIED. The appeal is not moot at this time."

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(N). The Panel has jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

Whether this appeal is equitably moot.

Whether the bankruptcy court clearly erred in finding the sales were to good faith purchasers for purposes of § 363(m).

Whether the bankruptcy court abused its discretion in approving the sale of the Properties under § 363(b).[4]

---

[4] By listing this issue, we acknowledge that Debtor raised it in this appeal. However, because the Sale Order included a § 363(m) finding as to the purchasers, as an appellate court we are precluded from reviewing any issues other than the "good faith" of the purchasers. Ferrari N. Am., Inc. v. Sims (In re R.B.B., Inc.), 211 F.3d 475, 478-80 (9th Cir. 2000); see (continued...)

-11-

## IV. STANDARDS OF REVIEW

Mootness is a question of law reviewed de novo. Nelson v. George Wong Pension Trust (In re Nelson), 391 B.R. 437, 442 (9th Cir. BAP 2008).

A bankruptcy court's determination of whether a purchaser of property acted in good faith under § 363(m) is a finding of fact reviewed for clear error. Thomas v. Namba (In re Thomas), 287 B.R. 782, 785 (9th Cir. BAP 2002). A finding of fact is clearly erroneous if it is illogical, implausible, or without support from evidence in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

A bankruptcy court's decision to approve a sale of estate property under § 363 is reviewed for abuse of discretion. Moldo v. Clark (In re Clark), 266 B.R. 163, 168 (9th Cir. BAP 2001). In determining whether the bankruptcy court abused its discretion we first determine de novo whether the trial court identified the correct legal rule to apply to the relief requested and, if so, we then determine whether the bankruptcy court's application of that standard was "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." United States v. Loew, 593 F.3d 1136, 1139 (9th Cir. 2010).

---

[4](...continued)
also In re River-W. Plaza Chicago, LLC, 664 F.3d 668, 672 (7th Cir. 2011) ("Our appellate jurisdiction over an unstayed sale order issued by a bankruptcy court is statutorily limited to the narrow issue of whether the property was sold to a good faith purchaser.").

## V. DISCUSSION

**A. This appeal is not equitably moot.**

**1.**

Win Win argues that this appeal is equitably moot because Debtor did not seek a stay pending appeal and Win Win would be financially harmed by a reversal of the Sale Order. We disagree.

Equitable mootness prevents an appellate court from reaching the merits when appellants have "'failed and neglected diligently to pursue their available remedies to obtain a stay'" and changes in circumstances "'render it inequitable to consider the merits of the appeal.'" Darby v. Zimmerman (In re Popp), 323 B.R. 260, 271 (9th Cir. BAP 2005) (quoting Focus Media, Inc. v. Nat'l Broad. Co., Inc. (In re Focus Media, Inc.), 378 F.3d 916, 923 (9th Cir. 2004)). In other words, equitable principles may require dismissal of the appeal when the appellant neglects to obtain a stay pending appeal and the rights of third parties intervene. Spirtos v. Moreno (In re Spirtos), 992 F.2d 1004, 1006 (9th Cir. 1993); In re Popp, 323 B.R. at 271.

The party asserting equitable mootness must demonstrate that the case involves transactions "so complex or difficult to unwind" that equitable mootness applies. Lowenschuss v. Selnick (In re Lowenschuss), 170 F.3d 923, 933 (9th Cir. 1999). The Ninth Circuit recently provided additional guidelines for our inquiry into equitable mootness:

> We endorse a test similar to those framed by the circuits that have expressed a standard: We will look first at whether a stay was sought, for absent that a party has not fully pursued its rights. If a stay was sought and not gained, we then will look to whether substantial consummation of the plan has occurred. Next, we will look to the effect a remedy may have on

-13-

third parties not before the court. Finally, we will look at whether the bankruptcy court can fashion effective and equitable relief without completely knocking the props out from under the plan and thereby creating an uncontrollable situation for the bankruptcy court.

Motor Vehicle Cas. Co. v. Thorpe Insulation Ins. Co. (In re Thorpe Insulation Ins. Co.), 677 F.3d 869, 881 (9th Cir. 2012).

Win Win argues that this appeal is equitably moot because: (1) Debtor failed to obtain, or even request, a stay of the Sale Order pending appeal; (2) in reliance on the Sale Order, Win Win subsequently sold the Alexandria Property to a Vista subsidiary, a third party; and (3) reversal of the Sale Order at this time would be detrimental to Win Win and Vista.

Win Win is correct that Debtor failed to request or obtain a stay pending appeal. The Thorpe Insulation court expresses considerable concern about cases in which an appellant fails to "pursue with diligence all available remedies to obtain a stay of execution of the objectionable order." In re Thorpe Insulation Ins. Co., 677 F.3d at 881. More recent cases from the Ninth Circuit have explained the equitable mootness rules discussed in Thorpe Insulation, and in particular the consequences of an appellant's failure to seek a stay pending appeal. Rev Op Grp. v. ML Manager (In re Mortgages Ltd.), 771 F.3d 1211 (9th Cir. 2014) (all cites below are to this opinion as "In re Mortgages, Ltd." at <page>); Rev Op Grp. v. ML Manager (In re Mortgages Ltd.), 771 F.3d 623 (9th Cir. 2014); Rev Op Grp. v. ML Manager (In re Mortgages Ltd.), ___ Fed. Appx. ___, 2014 WL 5840462 (9th Cir. 2014).

Reviewing the history of Ninth Circuit and BAP decisions

-14-

discussing an appellant's failure to seek a stay and equitable mootness, the In re Mortgages, Ltd. court cited to Trone v. Roberts Farms, Inc. (In re Roberts Farms, Inc.), 652 F.2d 793 (9th Cir. 1981): "It is obligatory upon appellant . . . to pursue with diligence all available remedies to obtain a stay of execution of the objectionable order . . . if failure to do so creates a situation rendering it inequitable to reverse the orders appealed from." Id. at 798 (quoted in In re Mortgages, Ltd., at 1215). Commenting on Roberts Farms and Thorpe Insulation, the In re Mortgages, Ltd. court observed: "While we recognized in Thorpe that an appeal should not be automatically dismissed for failure to obtain a stay, we reiterated our warning from Roberts Farms that an appellant must seek a stay. Otherwise, we stated the appellant has by definition 'not fully pursued its rights,' [quoting Thorpe Insulation, 677 F.3d at 881] and thus the appeal is subject to dismissal." In re Mortgages, Ltd., at 1216. Based upon the rules articulated in Roberts Farms and repeated in Thorpe Insulation, the In re Mortgages, Ltd. court reasoned that failure to seek a stay pending appeal, at least without an adequate excuse, requires dismissal of an appeal. "This is a clear bright-line rule that all litigants can understand." In re Mortgages, Ltd., at 1217.

Here, not only did Debtor not seek a stay pending appeal, but also rather than offer an acceptable excuse for not doing so, it made the troubling assumption that it was under no obligation to do so because the bankruptcy court allegedly erred in its good faith finding in the Sale Order and, thus, § 363(m) would not apply. Debtor seemingly did not contemplate that its failure to

-15-

seek a stay might raise equitable mootness problems.

But while Debtor did not seek a stay pending appeal, and provided no good excuse for its failure to do so, under the case law our inquiry does not end there. The rule discussed in In re Mortgages, Ltd. is subject to the same condition explained in Roberts Farms, Inc., Lowenschuss, and Thorpe Insulation, that there must also be some subsequent event that would render consideration of the issues on appeal inequitable, and thereby trigger an equitable mootness analysis. In re Robert Farms, Inc., 652 F.2d at 798 ("Appellants have failed and neglected diligently to pursue their available remedies to obtain a stay of the objectionable orders of the Bankruptcy Court and have permitted such a comprehensive change of circumstances to occur as to render it inequitable for this court to consider the merits of the appeal."); Lowenschuss v. Selnick (In re Lowenschuss), 170 F.3d 923, 933 (9th Cir. 1989) ("a claim is not equitably moot because th[e] case does not present transactions that are so complex or difficult to unwind that the doctrine of equitable mootness would apply"); In re Thorpe Insulation Co., Inc., 677 F.3d at 883 ("most importantly, we look to whether the bankruptcy court on remand may be able to devise an equitable remedy."). Indeed, the In re Mortgages, Ltd. court observed that "[a] party can move to dismiss an appeal as equitably moot if 'great changes in the status quo occurred after the district court rendered the orders appealed from[.]'" In re Mortgages, Ltd., at 1214 (quoting Algeran, Inc. v. Advance Ross Corp., 759 F.2d 1421, 1423 (9th Cir.1985)).

In sum, while in this appeal Debtor did not seek a stay of

-16-

the Sale Order pending appeal and has provided no satisfactory explanation for the failure to do so, to complete our equitable mootness analysis we must consider whether Debtor's failure to seek a stay "creates a situation rendering it inequitable to reverse the orders appealed from." In re Mortgages, Ltd., at 1216, (quoting In re Roberts Farms, Inc., 652 F.2d. at 798). We conclude that equity does not require that this appeal be dismissed.

Here, relying upon the Sale Order, Trustee sold the Alexandria Property to Win Win, and Win Win almost immediately resold it to Vista's subsidiary. There is case law to support the argument that a sale of property to a third party may moot an appeal because it precludes effective relief. Baker & Drake v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake), 35 F.3d 1348, 1351 (9th Cir. 1994). And in its analysis of the equitable mootness doctrine in bankruptcy cases, Thorpe Insulation expresses concern for third parties whose rights may be impacted on appeal but who are not "before the court." 677 F.3d at 881. But in this case, it is not at all clear that Vista (or its designee, Alex Court) is the sort of "third party" entitled to benefit from the equitable mootness doctrine. Vista was approved as a bidder in the Sale Order and its chief executive appeared before the bankruptcy court and submitted the bid. Vista has also participated in this appeal by filing a declaration in support of Win Win's appellate brief. In short, in our view, Win Win, Vista, and its subsidiary are "before the court" both in the bankruptcy court and in this appeal.

Another critical question is whether reversal of the Sale

-17-

Order involves transactions "so complex or difficult to unwind" that equitable mootness applies. In re Lowenschuss, 170 F.3d at 933. Surprisingly, we think this question is answered by Win Win in its appellate brief. According to Win Win, it entered into an agreement with Vista which specifies the consequences and respective rights and responsibilities of those parties if the Sale Order were to be unwound by this Panel:

> Win Win and [Vista] agreed that if the Sale Order is reversed: Win Win must return [] the entire $6,800,000 plus interest at 10% per annum; the portion of the purchase not used to pay off the existing loan Win Win secured in connection with the purchase of the Properties is [to] be held in escrow pending resolution of the appeal; [Vista] shall not be reimbursed for any improvements or liable for completion of any improvements at the Alexandria Property[;] however if required by the Trustee, Win Win is responsible to return the Alexandria Property to its pre-possession condition; and [Vista] is to retain all rental income received during its ownership.

Win Win Br. at 12-13.

In light of the parties' contract, none of the transactions involved in this appeal are "so complex or difficult to unwind" that equitable mootness would prevent our reversal of the Sale Order. Indeed, Win Win and Vista bargained for these transactions in anticipation of a possible reversal of the Sale Order in this Panel.

Although Debtor's decision to forego any effort to obtain a stay pending appeal was a risky one, we conclude that, even now, the Sale Order could be effectively unwound without inequity. This appeal is not equitably moot.

**2.**

Additionally, Debtor argues that the mootness of this appeal has already been "fully adjudicated" because the motions panel

-18-

denied Trustee's motion to dismiss. Debtor's Reply Br. at 12. Because of this, Debtor has apparently declined to address Win Win's argument that our review of the Sale Order is prohibited based on the bankruptcy court's § 363(m) finding and the fact that Debtor did not obtain a stay of the sales pending appeal.

Debtor was mistaken to have forfeited its opportunity to address the merits of the § 363(m) issue. In this circuit, a merits panel is always free to review the decisions made in an appeal by a motions panel. See United States v. Houser, 804 F.2d 565, 567 (9th Cir. 1986); In re Crystal Sands Props., 84 B.R. 665 (9th Cir. BAP 1988). Moreover, contrary to Debtor's position, the motions panel did not "fully adjudicate" the question of mootness; instead, the motions panel denied the motion to dismiss because the "appeal is not moot at this time." In employing this language in its order, the motions panel implicitly acknowledged that the mootness issue may be revisited by this Panel. We have done so above.

**B.    The bankruptcy court did not clearly err in determining that Win Win was a good faith purchaser in the Sale Order.**

**1.**

We first address a preliminary matter. Debtor requests in its reply brief that the Panel strike four volumes of Trustee's excerpts of record because Trustee failed to designate them within the fourteen day period required by Rule 8006.[5] Debtor

---

[5] The Federal Rules of Bankruptcy Procedure were modified effective December 1, 2014. This discussion refers to the Rules which were in effect at the time this appeal was filed. Rule
(continued...)

Reply Br. at 1. But we are also mindful of the provision in Rule 8001(a) which instructs that:

> An appellant's failure to take any step other than timely filing a notice of appeal does not affect the validity of the appeal, but is ground for only such action as the district court or bankruptcy appellate panel deems appropriate[.]

Debtor has given us no reason, other than the Rule 8006 time requirement for designating the record on appeal, for rejecting the "supplemental" documents offered by Trustee in the four volumes. With a few minor exceptions that do not affect our analysis, these are all documents appearing in the docket of the bankruptcy court, and known to the bankruptcy court at the time of entry of the Sale Order. We therefore exercise our discretion and have considered Trustee's supplementary excerpts.[6]

**2.**

There is also a misconception in Debtor's arguments in this

---

[5](...continued)
8006 was modified and renumbered as Rule 8009 and Rule 8001 was modified and renumbered as Rule 8003 as of December 1, 2014. The salient provisions of each rule remain unchanged.

[6] Debtor also requests that we strike two declarations filed by the President of Vista and the Managing Member of Win Win, and attached to Win Win's appellate brief, relating to the actions of those purchasers after entry of the Sale Order. To the extent that these declarations attempt to explain disputed facts, such as the reason why Trustee did not complete the sale of the Alexandria Property to Vista, the Panel will not try to resolve those disputes. However, to the extent that the declarations discuss undisputed facts, such as the existence and terms of the agreement between Vista and Win Win to take certain actions in the event this Panel overturns the Sale Order, we considered those facts in our discussion of equitable mootness in the Jurisdiction section above.

appeal which we must dispel. Several times in its appellate briefs Debtor argues that "[t]he burden of proof is on the proponent of good faith, i.e., the Appellee [Trustee and Win Win] herein." For support, Debtor cites to this Panel's opinion in T.C. Investors v. Joseph (In re M Capital Corp.), 290 B.R. 743, 747 (9th Cir. BAP 2003) ("the proponent of section 363(m) good faith has the burden of proof."). However, the Ninth Circuit explicitly rejected the BAP's In re M Capital Corp. holding concerning the burden of proof on good faith under § 363(m) because, according to the court, it was inconsistent with Ninth Circuit precedent.[7] Weinstein, Eisen & Weiss, LLP v. Gill (In re Cooper Commons, LLP), 424 F.3d 963, 970 (9th Cir. 2005). In Cooper Commons, the court noted that, as explained in In re Adams Apple, 829 F.2d 1484, 1489 (9th Cir. 1987), in connection with a sale to a creditor under § 363(m),[8] "we presume the [creditor's] good faith and then inquire to see whether the

---

[7] In Fitzgerald v. Nunn Worx SR, Inc. (In re Fitzgerald), 428 B.R. 872, 880-81 (9th Cir. BAP 2010), the BAP relied on In re M Capital Corp. in ruling against the proponent of good faith. In that case, however, the ruling was that the proponent had not prayed for a good faith finding and the court made no good faith determination at all, and thus it was not a question of the shifting burden of proof.

[8] In Cooper Commons, the court acknowledged that, in In re Adams Apple, the court examined good faith under § 364(e), while the M Capital Corp. BAP panel was reviewing a buyer's good faith under §363(m). In re Cooper Commons, LLP, 424 F.3d at 970. The Cooper Commons court noted that there was no difference in the determination of good faith under those statutes. Id. at 970 n.2.

-21-

presumption can be overcome." Id. at 969-70.[9]

Under the facts of this case, however, we do not find it necessary to reconcile In re M Capital with In re Adams Apple. Under In re Adams Apple, Win Win is presumptively a good faith purchaser; as discussed below, consistent with In re M Capital, Trustee has presented good and sufficient evidence that Win Win was a good faith purchaser at the time of the Sale Order. Thus, a burden of proof analysis in this case is unnecessary.

**3.**

Debtor argues that the bankruptcy court failed to make adequate findings of fact regarding the good faith of purchaser Win Win in connection with entry of the Sale Order. We disagree and conclude the court's findings satisfy the requirements of the statute and case law.

Section 363(m) provides that:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

Under § 363(m), the first requirement of a "good faith" purchaser is that there be an identifiable purchaser. In re R.B.B., Inc., 211 F.3d at 478-80. That element is satisfied in this case; it is not disputed that Win Win was clearly identified as a potential purchaser in connection with

---

[9] The BAP decision in In re M Capital Corp. did not acknowledge this presumption.

-22-

both sales.

A second requirement for good faith under § 363(m) is that all parties have adequate notice of the sale. United States v. Moberg Trucking Co. (In re Moberg Trucking Co.), 112 B.R. 362, 366 (9th Cir. BAP 1990). Here, all parties in interest received ample notice of the hearings held to approve the Bid Procedures and the Sale Motions and of the sale itself.

The Bankruptcy Code does not provide a definition of a good faith purchaser under § 363(m). Beyond the requirements identified above, the Ninth Circuit has traditionally held that "a good faith purchaser is one who buys 'in good faith' and 'for value.'" In re Ewell, 958 F.2d. 276, 281 (9th Cir. 1992) (citing In re Abbotts Dairies of Pa., Inc., 788 F.2d 143, 147 (3d Cir. 1986)). Good faith under § 363(m), in turn, is defined negatively, that is, "a lack of good faith is shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" Community Thrift & Loan v. Suchy (In re Suchy), 786 F.2d 900, 902 (9th Cir. 1985).

Therefore, in addition to requirements that there was adequate notice of the sale and bidding procedures and that the winning bidder was identifiable, the criteria for a good faith purchaser under § 363(m) are that the winning bid provided value to the estate and the winning bidder did not engage in fraud, collusion, or attempt to take unfair advantage of other bidders.

In this case, the bankruptcy court made a finding that Win Win's bid, which in addition to its secured credit bid offered to pay cash to the estate, along with its willingness to limit the

-23-

amount of any potential administrative expense claims, represented considerable value to the creditors of the bankruptcy estate:

> I find the sale to be in the estate's best interests, given the savings of litigation costs [and] the waiver of satisfaction of substantial claims against the estate that would result from the sale.

Hr'g Tr. 30:11-15, May 30, 2013.

The bankruptcy court also noted that the "only evidence of the [Alexandria Property's] value before the court is an appraisal prepared by Win Win which reflects the value of the property at $5.3 million." Hr'g Tr. 31:10-12. Similarly, the only formal appraisal of the Union Property was also the Win Win appraisal of $3,300,000. Of course, the bankruptcy court had indicated that Debtor could challenge the accuracy of the Win Win appraisals through submission of its own appraisals. Hr'g Tr. 33:12-13, November 27, 2012. Debtor informed the bankruptcy court that it would need forty-five days to prepare the appraisals. Hr'g Tr. 33:20-23. While it was afforded time to do so, Debtor never submitted any appraisal for either property, nor did it ever provide an explanation for its failure to comply with the bankruptcy court's instructions if it intended to dispute the value of the Properties.

Appraisals can assist the bankruptcy court in determining the good faith of a proposed purchaser. While the Ninth Circuit has not done so expressly, four other circuits have held that a purchaser who pays at least 75 percent of the appraised value of a property has purchased for value. Kabro Assocs., LLC v. Colony Hill Associates (In re Colony Hill Associates), 111 F.3d 269, 276

(2d Cir. 1997) ("Courts have held that a purchaser who pays '75% of the appraised value of the assets' has tendered value, as that term is used for purposes of § 363(m)."); In re Abbotts Dairies of Pennsylvania, Inc., 788 F.2d at 149; In re Bel Air Assocs., Ltd., 706 F.2d 301, 305 n.12 (10th Cir. 1983); In re Rock Indus. Mach. Corp., 572 F.2d 1195, 1197 n.1 (7th Cir. 1978). Here, the minimum credit bids to be made by Win Win at the sales, $4,500,000 for the Alexandria Property, and $2,700,000 for the Union Property, were more than 80% of the appraised values of the Properties. In other words, on this record, the bankruptcy court had an ample basis to conclude that Win Win's minimum credit bids, together with its other concessions, would yield sales of benefit and value to the estate.

Additionally, the bankruptcy court had evidence in the record that the tenants' association for the Properties was preparing litigation against the Receiver, Win Win, and Debtor as a result of the various code violations that resulted in the REAP placement. Further, the bankruptcy court had voluminous records from Trustee and Receiver relating to the significant postpetition expenses incurred and paid by Win Win for the maintenance and rehabilitation of the Properties. Debtor objected in the bankruptcy case, and in this appeal, that these costs were inflated, and that the bankruptcy court had not formally decided that Win Win's expenditures would be allowed as administrative claims. Of course, allowance of any administrative claims would require bankruptcy court review, giving Debtor the additional opportunity to object. However, Debtor never submitted any argument or evidence that any specific

-25-

items in the billings submitted by Win Win were excessive. Moreover, it cannot reasonably be disputed that substantial expenses were continuing to be incurred as a result of the estate's ownership of the Properties. Avoiding accruing expenses was therefore an additional benefit to a prompt sale of the Properties.

Finally, it is important to note that an auction occurred. No parties other than Vista submitted bids in excess of the Win Win bid on the Alexandria Property and there were no bids besides Win Win's minimum bid for the Union Property. The absence of any other interested bidders was also evidence that Win Win's offers were made in good faith.

**4.**

In contesting the bankruptcy court's good faith finding, Debtor makes two arguments. The first is that Trustee "unilaterally decided" not to complete the sale as authorized by the Sale Order to Vista, and instead "allowed his preferred purchaser" (i.e., Win Win) to acquire the Alexandria Property "by default." Debtor's Op. Br. at 12. In Debtor's opinion, the later sale of the Alexandria Property by Win Win to a Vista subsidiary within weeks of entry of the Sale Order on the same terms Vista originally bid renders the entire sale process inherently suspicious. We examine the import of this argument in the next section.

Debtor's second argument is that, at the time of the entry of the Sale Order, "as a further indication of fraud, collusion and unfair advantage . . . the Trustee and/or his counsel thwarted attempts by prospective third party purchasers from

-26-

making any bids on the property or engaging in the bankruptcy process." Debtor's Op. Br. at 14. Debtor's allegations were discussed in the bankruptcy court at length at the hearings on the Bid Motion and Sale Motion.

In opposition to this suggestion, Trustee represented that he, or his office staff, had responded to every request for information and to view the Properties made to him, including ten-to-fifteen referrals from Debtor. He also noted that access to the Properties was controlled by the Receiver as authorized by the bankruptcy court and Trustee should not be blamed for the difficulties some parties may have encountered accessing the Properties.

Before the auction took place, the bankruptcy court admonished Debtor's counsel for engaging in "gamesmanship," specifically, by providing a bid from Gangi Development of $9,800,000 for the Alexandria Property the night before the auction, and objecting at the last minute to Trustee's marketing efforts on the Properties. Nevertheless, the court recessed to allow the parties and the court to examine the late-filed bid. The court concluded the bid was inappropriate because it did not conform to the Procedures Order: the offered deposit of $100,000 was less than the required deposit of $250,000; the bid was untimely filed on May 30, 2013, whereas the Procedures Order required submission no later than May 23, 2013; and the submission included no proof that the bidder had readily available funds to complete a sale.

Fairly viewed, Debtor's argument on appeal that Trustee allegedly discouraged bids is a continuation of its position in

-27-

the bankruptcy court that Trustee failed to properly market the Properties. Despite the various allegations of Debtor, the court found that Trustee had properly marketed the Properties:

> I further find that the trustee's efforts to market the Union Street and Alexandria Avenue Properties was sufficient, given the length of time the properties have been on the market, the estate's resources, and the simple fact that these properties are property of a bankruptcy debtor.

Hr'g Tr. 30:16-20. Here, the bankruptcy court had been presented with two views of the evidence, one that Trustee had failed to market the Properties by discouraging bidding, and one that Trustee had not discouraged bidding but actively responded to inquiries. Where there are two views of the evidence, the bankruptcy court's choice between them cannot be clearly erroneous. Lehtinen v. Lehtinen (In re Lehtinen), 332 B.R. 404, 411 (9th Cir. BAP 2005).

We are also persuaded by Trustee's arguments that, at the time of entry of the Sale Order, the bankruptcy court had no reason to believe that Trustee and Win Win were engaged in fraud, collusion, or seeking to take unfair advantage of the sale process. Contrary to its current position, at the hearing on the bidding procedures, counsel for Debtor assured the court that it was not asserting that Trustee had colluded with Win Win: "The Debtor is not arguing there's been any collusion between the trustee [and Win Win]." Hr'g Tr. 18:6-8, April 11, 2013. As to Debtor's various allegations that Trustee and Win Win had significant contacts before the Sale Order, this is not evidence of any unfair advantage. Trustee was charged by the bankruptcy court with responsibility for evaluating Win Win's secured claim,

and to do so, Trustee would presumably have contacts with Win Win.

**5.**

The bankruptcy court relied upon sufficient, competent evidence in finding that the proposed sales to Win Win were for value and benefitted the bankruptcy estate. At the time the Sale Order was entered, the bankruptcy court had been offered no credible evidence to show that Trustee or Win Win were engaged in fraud, collusion, or unfair advantage. Therefore, we conclude that the bankruptcy court did not clearly err in finding that, at the time of entry of the Sale Order, Win Win was a good faith purchaser.

**C. Because the Panel may not engage in fact-finding concerning events that occurred after entry of the Sale Order, this matter must be remanded to the bankruptcy court to consider whether any basis exists to reconsider its good faith finding in the Sale Order.**

While we find no error in the bankruptcy court's fact finding that, based upon the record before it at the time of the Sale Order, Win Win was a good faith purchaser entitled to the protections of § 363(m), Debtor has directed the Panel's attention to certain facts occurring after entry of the Sale Order that could plausibly support an inference of collusion between Trustee and Win Win. In light of these developments, under our case law, we must remand this matter to the bankruptcy court for further proceedings.

As explained above, a determination of good faith in a sale order under § 363(m) is a finding of fact to be reviewed on appeal for clear error. In re Thomas, 287 B.R. at 785. Based upon the evidence and record, a bankruptcy court may, but is not

-29-

required to, make a § 363(m) finding in connection with the initial sale process.  Id. (explaining that the "choice of whether to make a finding of 'good faith' as part of the initial sale process belongs, in this circuit, to the bankruptcy court.").  However, all the facts necessary to a good faith determination may not be available to the bankruptcy court at the time it initially approves a sale:

> The difficulty with the [§ 363(m)]factual determination is that evidence genuinely probative of "good faith" is not commonly introduced, or even reasonably available, at the time a bankruptcy court approves a sale.  To the contrary, the fact-intensive evidence regarding the buyer and relations with parties in interest that may indicate fraud, collusion, or unfair advantage — i.e. evidence suggesting lack of "good faith" — tends to emerge after the sale.

Id.

Central to Debtor's position on appeal is its allegation that Trustee acted inappropriately in connection with the sales and, thus, the bankruptcy court clearly erred in finding that Win Win was a good faith purchaser.  While we reject that notion based upon the bankruptcy court's findings made at the time of the entry of the Sale Order, Debtor argues on appeal that the actions of Trustee after entry of the Sale Order support its contention.  In particular, Debtor points to the events resulting in Trustee's apparent inability to close the sale of the Alexandria Property to Vista, Trustee's decision to sell the Alexandria Property via a credit bid to Win Win as the "back up bidder" under the Sale Order, and Win Win's subsequent sale of the Alexandria Property to a Vista subsidiary for the same price as it originally offered Trustee.

Of course, Trustee and Win Win dispute the existence of any

irregularities after entry of the Sale Order.  However, the facts identified by Debtor justify additional inquiry, something the Panel may not undertake because "an appellate court is ill-equipped to take evidence and make findings on such a fact-intensive question as 'good faith' . . . ." Id. at 786.  Whether facts exist which could, conceivably, alter the bankruptcy court's good faith finding is a question that, as the fact-finder, only the bankruptcy court, and not the Panel, can decide:

> If an issue regarding "good faith" arises after the § 363(b) sale order is entered, regardless of whether the court initially made a "good faith" finding, the appropriate procedure for addressing the issue is provided by Federal Rules of Civil Procedure 59 and 60, which apply in bankruptcy by virtue of Federal Rules of Bankruptcy Procedure 9023 and 9024. . . .  In deciding Rule 59 and 60 motions, the bankruptcy court will make findings of fact regarding "good faith" (either for the first time or supplementing prior findings), which findings may then be reviewed on appeal for clear error.

Id. at 785-86;[10] see also First State Operating Co. v. Holbrook (In re Lotspeich), 328 B.R. 209, 218 (10th Cir. BAP 2005) (acknowledging that, in the absence of the fact findings

---

[10] After the limited remand in In re Thomas, the bankruptcy court entered detailed findings to support its conclusion that the buyer in that case was indeed a good faith purchaser of the property.  Thomas again appealed the bankruptcy court's order, and the Panel consolidated that appeal with the original appeal. In an unpublished decision, the Panel determined that the bankruptcy court's finding of good faith was not clearly erroneous and affirmed the bankruptcy court's good faith finding and the order approving the sale.  Thomas v. Namba (In re Thomas), BAP No. CC-02-1307/1237 (Memorandum, January 9, 2004).  Thomas appealed the Panel's decisions to the Ninth Circuit, which affirmed.  Thomas v. Namba (In re Thomas), 154 Fed. Appx. 673 (9th Cir. 2005).

necessary to show a purchaser is acting in good faith, a remand to the bankruptcy court is required).

The essence of Debtor's argument here is that two events occurring after entry of the Sale Order evidence its contention that there was some sort of fraud, collusion, or seeking unfair advantage between Trustee and Win Win, and possibly between Win Win and Vista, in completing the sales. First, as Trustee concedes, Trustee did not complete the sale of the Alexandria Property to the winning bidder, Vista, as ordered by the bankruptcy court and, instead, sold the Property to Win Win as the backup bidder. The record is disputed as to why the sale to Vista by Trustee was not completed. Trustee and Win Win suggest in their appellate briefs that an unresolved tax lien and inability to obtain title insurance prevented the sale from closing. Trustee, however, provides little information about what tax lien was involved, why a title company would not insure clear title, and why this predicament prevented the sale to Vista, but allowed a sale to Win Win and later the Win Win-to-Vista transfer. Debtor disputes that these circumstances justified Trustee's decision to sell to Win Win instead of Vista.

The other significant post-Sale Order event targeted by Debtor concerns Win Win's almost simultaneous sale of the Alexandria Property to Vista for the same price that Vista originally bid in the bankruptcy court. Win Win alleges in its appellate brief that it was under water in its investment in this property in excess of $2,000,000, and that it did not want to hold on to the asset. Debtor, however, argues that this transaction suggests there was fraud, collusion, and unfair

-32-

dealing among Trustee, Win Win, and Vista, insofar as there is no adequate explanation why, within weeks of the sale, Vista would decline to pay Trustee and the estate $6,800,000 absent title insurance, but was nonetheless willing to pay Win Win the same amount.

While we are skeptical of Debtor's allegations of impropriety in concluding the sales, we cannot properly resolve these issues. We are bound by In re Thomas which instructs that, under these circumstances, the bankruptcy court, not the Panel, should decide whether to reexamine its original § 363(m) good faith determination. Since this appeal divested the bankruptcy court of jurisdiction to alter the status quo of the appeal, the Panel concludes its should grant a "limited remand to the trial court for the purpose of determining the factual question of 'good faith.'" In re Thomas, 287 B.R. at 786 (citing Chas. A. Wright et al., FEDERAL PRACTICE & PROCEDURE § 3937.1 at n.29 (2d ed. 1996)).

## VI. CONCLUSION

While this Panel concludes that the bankruptcy court did not err in ruling that Win Win was a § 363(m) good faith purchaser based upon the record before it at the time it entered the Sale Order, we REMAND this matter to the bankruptcy court with instructions that it conduct such further proceedings as it deems appropriate to decide whether it should reconsider its § 363(m) good faith finding concerning the purchasers based upon any events and facts occurring after entry of the Sale Order.

-33-